UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DONALD SCHULZ,

                                            Petitioner,

v.                                                                              9:23-cv-0295
                                                                                (AJB/TWD)


WARDEN,

                                            Respondent.

_____

APPEARANCES:                              OF COUNSEL:

DONALD SCHULZ
*Petitioner, pro se*
21962-044
RRM ST. LOUIS
Residential Reentry Office
1222 Spruce Street
Suite 6.101
St. Louis, MO 63101

OFFICE OF THE UNITED STATES          KAREN FOLSTER LESPERANCE, ESQ.
ATTORNEY - ALBANY
*Attorney for Respondent*
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, NY 12207


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

### I.    INTRODUCTION

This matter has been referred for a Report and Recommendation by the Hon. Anthony J.

Brindisi, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule

72.3(c).  Petitioner Donald Schulz ("Petitioner") seeks federal habeas corpus relief pursuant to

28 U.S.C. § 2241.  Dkt. No. 1.  For the reasons set forth below, the undersigned recommends the petition be denied and dismissed.

## II.    BACKGROUND

Petitioner is serving a 156-month term of imprisonment, to be followed by a three-year term of supervision, following conviction in the U.S. District Court for the Eastern District of New York for Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and Being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  *See* Dkt. No. 10-1 at 1-2; *see also* Dkt. No. 10-2 at 2-3.[1] Petitioner commenced this action on March 2, 2023, while incarcerated at the Federal Correctional Institution at Ray Brook, seeking application of Federal Time Credits ("FTC") under the First Step Act ("FSA").  *See generally*, Dkt. No. 1 at 1-4.

## III.   PETITION

Petitioner seeks federal habeas corpus relief due to the Federal Bureau of Prison ("FBOP")'s denial of his application of FTC to reduce his term of confinement.  *See* Dkt. No. 1 at 1.  Respondent first contends the instant petition is procedurally barred due to Plaintiff's failure to exhaust administrative remedies available to him though the BOP's administrative remedy program.  *See* Dkt. No. 10 at 3-5.  More specifically, Respondent avers Petitioner submitted a Request for Admin to the Warden at FCI Ray Brook on or about March 12, 2023, "requesting the application of FSA credit towards early release supervision," the Warden denied Petitioner's request on March 27, 2023, and Petitioner did not submit an appeal of the Warden's

---

[1] Citations to the parties' submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

decision to the appropriate Regional Office or the BOP's office of General Counsel.  Dkt. No.

10-1 at 5; *see also* Dkt. No. 10 at 4-5; Dkt. No. 10-6.  Respondent further argues Petitioner is not

eligible to apply FSA credits due to his "medium" Prisoner Assessment Tool Targeting

Estimated Risk and Needs ("PATTERN") score and has not sought the Warden's discretion to

apply FSA credits irrespective of his PATTERN score; therefore, habeas relief is not warranted.

*See* Dkt. No. 10 at 5-7.

      In his reply, Petitioner first contests the availability of administrative remedies at FCI

Ray Brook.  *See* Dkt. No. 13 at 2.  To that end, Petitioner references a BP (10) form sent to the

BOP Regional Office, dated December 16, 2022, wherein Petitioner stated:

> FCI-Ray Brook CMC Matteau, Unit Team, and Admin. Remedy
> Coordinator Price are refusing to process Admin. Remedies here at
> Ray Brook.  I submitted a BP9 Admin. Remedy Request to the
> Warden's Office seeking application of the Earned Time Credit
> (ETC) that has accrued since December 2018 . . . . BECAUSE
> MORE THAN 50 DAYS HAVE ELAPSED SINCE I SUBMITTED
> MY BP9 TO THE WARDEN'S OFFICE AND IT HAS NOT BEEN
> ANSWERED, AND THE TIME FOR ANSWERING HAS NOT
> BEEN EXTENDED, THIS BP 10 IS PROPERLY FILED.

*Id*. at 4 (cleaned up) (emphasis in original).[2,3]  Thus, Petitioner argues he "not only filed one BP

(9) but rather two of them . . . ."  *Id*. at 2.  Petitioner further avers he is entitled to application of

FTC under 18 U.S.C. §§ 3621(g)(1)(B) and (D).  *See id*. at 2-3.

---

[2] The same form was also submitted by Petitioner as an exhibit to his original petition.  *See* Dkt.
No. 1 at 8.

[3] While the SENTRY Administrative Remedy Generalized Retrieval records submitted by
Respondent appear to show a submission was received from Plaintiff on "12-22-2022" for
"FTC" which was rejected with the following remarks, "YOU DID NOT RECEIVE A
RESPONSE TO YOUR BP9 BECAUSE YOU DID NOT FILE ONE," Dkt. No. 10-6 at 8, the
Declaration of FCI Ray Book Case Management Coordinator Yancy Matteau does not address
the filing in discussing Petitioner's attempt to exhaust administrative remedies, *see* Dkt. No. 10-1
at 4-5, and Respondent's memorandum of law in opposition to the instant petition similarly
references only Petitioner's March 12, 2023, BP-9 filing, *see* Dkt. No. 10 at 3-5.

## IV.    LEGAL STANDARD

Habeas corpus relief is available where a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "A § 2241 petition is generally the appropriate vehicle to raise claims arising from a prison official's computation of a prisoner's sentence."  *Clapper v. Langford*, 186 F. Supp. 3d 235, 238 (N.D.N.Y. 2016) (citing *Poindexter v. Nash*, 333 F.3d 372, 377 (2d Cir. 2003)); *see also*, *e.g.*, *Lugo v. Hudson*, No. 9:13-CV-0753 (GTS), 2014 WL 11350815, at *4 (N.D.N.Y. June 16, 2014) (explaining the petitioner's challenge to "the BOP's calculation of his federal sentence," was "properly brought pursuant to section 2241."), *aff'd*, 785 F.3d 852 (2d Cir. 2015); *Holton v. Fed. Bureau of Prisons*, No. 6:22-CV-6528 (CJS), 2023 WL 2965145, at *2 (W.D.N.Y. Apr. 17, 2023) (habeas petitioner pursuant to 28 U.S.C. § 2241was "the appropriate vehicle" for the petitioner's claim he was entitled to FSA time credit).

Federal inmates seeking habeas relief pursuant to 28 U.S.C. § 2241 must exhaust their administrative remedies prior to filing a petition.  *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001).  "This requires compliance with the BOP's four-step Administrative Remedy Program."  *Lallave v. Martinez*, 609 F. Supp. 3d 164, 179 (E.D.N.Y. 2022) (citing 28 C.F.R. § 542.10(a)).  "A federal inmate's failure to exhaust the administrative remedies available to him prior to commencing a Section 2241 action may 'only be excused upon a showing of cause and prejudice.'"  *Dennis v. Christensen*, No. 9:22-CV-0997 (AJB/ML), 2025 WL 1885207, at *2 (N.D.N.Y. Apr. 29, 2025) (citing *Carmona*, 243 F.3d at 634), *report and recommendation adopted*, 2025 WL 1554003 (N.D.N.Y. June 2, 2025).  However, "[j]udicial exhaustion is not a jurisdictional requirement . . . . Accordingly, the court may excuse exhaustion if it appears that an administrative appeal would be futile, or because the appeals

process is shown to be inadequate to prevent irreparable harm . . . ." *United States v. Basciano*, 369 F. Supp. 2d 344, 348 (E.D.N.Y. 2005) (first citing *Howard v. Headly*, 72 F. Supp. 2d 118, 122 (E.D.N.Y.1999); then citing *Howell v. Immigration and Naturalization Serv.*, 72 F.3d 288, 291 (2d Cir. 1995)) (additional citations omitted); *see also*, *e.g.*, *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (explaining, "if an exhaustion requirement is judicially imposed instead of statutorily imposed, a number of exceptions apply that allow courts to excuse a party's failure to exhaust administrative remedies. Specifically, exhaustion of administrative remedies may not be required when '(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.'") (quoting *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996)) (additional citations omitted); *Lopez v. Terrell*, 697 F. Supp. 2d 549, 556 (S.D.N.Y. 2010) ("The exhaustion requirement for § 2241 petitions, however, is prudential, not statutory, and may be excused at the court's discretion."), *rev'd on other grounds*, 654 F.3d 176 (2d Cir. 2011).

The FSA created parameters for a "risk and needs assessment system" to classify, identify, and provide evidence-based recidivism reduction programs or productive activities for incarcerated individuals. 18 U.S.C. § 3632(a). Such system is used to, *inter alia*, "determine the recidivism risk of each prisoner . . . and classify each prisoner as having minimum, low, medium, or high risk for recidivism;" "reasses the recidivism risk of each prisoner periodically . . . ;" and "determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624 . . . ." *Id.* § 3632(a)(1)-(8). Under the FSA, eligible inmates may earn specified time credits per month, if they "successfully participate in recidivism reduction programs or productive activities," and such time credits "shall be applied toward time in

prerelease custody or supervised release," *id*. § 3632(d)(4)(C), however, certain prisoners are ineligible to receive or apply time credits.

Under § 3624, a prisoner is eligible to be placed in "supervised release" if "prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner."  18 U.S.C. § 3624(g)(1)(D)(ii).  Alternatively, a prisoner may be placed in "prerelease custody" if the prisoner either "has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner;" *or* "has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison," after the warden has determined:

> (aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;
> (bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and
> (cc) the prisoner is unlikely to recidivate[.]

*Id*. § 3624(g)(1)(D)(i).  The process for a prisoner to petition the warden to be transferred is set forth in BOP Program Statement 5410.01 CN-2.  *See* Dkt. No. 10-1 at 3; Dkt. No. 10-5 at 18-23; *see also*, *e.g.*, *Chandler v. United States*, No. 3:25-1248, 2025 WL 3270524, at *5 (M.D. Pa. Nov. 24, 2025).  The Program Statement explains "[i]nmates may initiate a request . . . by submitting a BP-A0148, Inmate Request to Staff, during their regularly scheduled Program Review.  The Unit Manager will submit a request, along with the unit team's recommendation, to the Warden (or designee) for final decision."  Dkt. No. 10-5 at 21.

## V.    DISCUSSION

A petitioner in a habeas proceeding under 28 U.S.C. § 2241 "bears the burden of proving that he is being held contrary to law; and . . . must satisfy his burden of proof by a preponderance of the evidence."  *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (citing *Parke v.*

*Raley*, 506 U.S. 20, 31 (1992)) (additional citation omitted).  Petitioner has failed to meet this burden, therefore, the undersigned recommends the petition be denied and dismissed.

First, at Petitioner's most recent risk assessment at the time of filing, he was assessed as a "medium" risk of recidivism.  Dkt. No. 10-1 at 3 (citing Dkt. No. 10-3 at 2); *see also* Dkt. No. 13 at 5.  Because Petitioner has not been deemed a "minimum" or "low" risk to recidivate, Respondent is correct that he is not eligible for application of time credits under 18 U.S.C. § 3624(g)(1)(D)(i)(I) to be placed in prerelease custody or 18 U.S.C. § 3624(g)(1)(D)(ii) to be placed in supervised release.  *See, e.g.*, *Bridges v. Rickard*, No. 3:25-CV-1201, 2025 WL 2375271, at *2 (M.D. Pa. Aug. 14, 2025) (explaining, "inmates who are eligible for FSA time credits can accrue credits, but they cannot be applied until the inmate has earned a minimum or low recidivism risk.") (citing 18 U.S.C. § 3624(g)(1)(D)(i)(I); 18 U.S.C. § 3624(g)(1)(D)(ii); 28 C.F.R. § 523.44(c)(1); 28 C.F.R. § 523.44(d)(1)), *aff'd sub nom.*, *Bridges v. Warden Schuylkill FCI*, No. 25-2685, 2025 WL 3251774 (3d Cir. Nov. 21, 2025); *Stepp v. Thompson*, No. 1:22-CV-964, 2022 WL 16748607, at *2 (M.D. Pa. Nov. 7, 2022) ("Congress has determined that [petitioner] will not be eligible for application of FSA time credits until, among other requirements, [his] risk level is reduced to minimum or low.") (citation omitted).

As Respondent acknowledges, "[t]he majority of the points in his PATTERN score result from Petitioner's criminal history, a static factor."  Dkt. No. 10 at 6 (citing Dkt. No. 10-3 at 2). Petitioner appears to argue the weight of this static factor runs contrary to Congress' intent, asserting "Congress expressly in 18 U.S.C. § 3621(g)(1)(B) uses the following language in regards to the recidivism risk Score, that the inmate['s] efforts to obtain a low or minimum recidivism risk depends on [] his current incarceration 'a minimum or low recidivism risk, DURING THE PRISONER'S TERM OF INCARCERATION" therefore, Petitioner contends

"the extra 3 points on the PAT[TERN] assessment that resulted in a medium level assessment is in error to begin with," as they result from Petitioner's criminal history, prior to his current term of incarceration.  Dkt. No. 13 at 2 (emphasis in original); *see also* Dkt. No. 1 at 3 ("I will never reduce my PATTERN score to a low, and . . . I will therefore never be able to take advantage of my earned FTC").  However, the fact that Petitioner has not committed one of the "certain crimes . . . that exempt the prisoner from earning Time Credits," Dkt. No. 13 at 2, under 18 U.S.C. § 3632(d)(4)(D) does not preclude him from being assessed at a "medium" or "high" recidivism risk score such that his time credits could not be applied.  *See, e.g., Brown v. Garrett*, No. 7:22-CV-00551 (AMM/JHE), 2022 WL 18161601, at *3 (N.D. Ala. Dec. 22, 2022) (rejecting the petitioner's argument that "she 'will never be a [l]ow or [m]inimum risk due to [her] past criminal history'" and explaining, "[w]hile [the petitioner] is free to earn time credits as an inmate with a medium risk recidivism level, under 18 U.S.C. § 3624(g)(1)(D)(i)-(ii), the BOP cannot apply those time credits to her sentence unless and until she has a minimum or low risk recidivism level for two consecutive assessments for prerelease custody or a minimum or low risk recidivism level for the last assessment for supervised release."), *report and recommendation adopted*, 2023 WL 130519 (N.D. Ala. Jan. 9, 2023).  Moreover, insofar as Petitioner asks "this Court to order the FBOP to re[]duce [his] PATTERN score by the 3 points preventing [him] from attaining a low PATTERN score," Dkt. No. 1 at 4, the Court may not do so as the calculation of his recidivism risk score is solely within the discretion of the BOP.  *See, e.g., Asbury v. Kelly*, No. 5:25-HC-2020-D, 2025 WL 3211220, at *2 (E.D.N.C. Nov. 17, 2025) (explaining, "calculating [the petitioner]'s recidivism risk score is solely within the discretion of the BOP.") (citing *Doran v. FCI-Herlong*, No. 2:22-CV-2040, 2023 WL 6314241, at *3 (E.D. Cal. Sept. 28, 2023) (explaining, while 18 U.S.C. § 3624(g) "permits petitioner to earn time

credits under the FSA, it does not allow for the application of those time credits in his case, because the statute limits eligibility to those inmates who pose a minimum to low risk of recidivism.  As petitioner has been assessed at high risk of recidivating, he is statutorily ineligible for application of earned time credits.  Respondent is also correct that this determination is solely within the discretion of the BOP."); *Newell v. Fikes*, No. 2:22-CV-53, 2023 WL 2543092, at *2 (S.D. Ga. Feb. 21, 2023), *report and recommendation adopted*, 2023 WL 2541126 (S.D. Ga. Mar. 16, 2023)) (additional citation omitted).

   Finally, as Respondent asserts, *see* Dkt. No. 10 at 6, and Petitioner does not contest, *see* Dkt. No. 13 at 2-3, Petitioner has not submitted a BP-A0148 form request to petition the warden for transfer.  *See also* Dkt. No. 10-1 at 4.  Therefore, while Petitioner is correct that a "medium" or "high" pattern score does not preclude transfer to prerelease custody or supervised release under 18 U.S.C. § 3624(g)(1)(D)(i)(II), because he has not made the requisite request to the warden in the manner set forth in the relevant BOP Program Statement, Petitioner is not entitled to habeas relief on this basis.  *See*, *e.g.*, *Bridges*, 2025 WL 2375271, at *2 (M.D. Pa. Aug. 14, 2025) (explaining, "an inmate with a high or medium PATTERN score can petition the warden to be considered on an individualized basis for placement in prerelease custody or supervised release" and denying habeas relief where there was "nothing in the record indicating that [the petitioner had] made such a request to the warden.") (citing 18 U.S.C. § 3624(g)(1)(D)(i)(II)).

   In sum, Petitioner has failed to demonstrate he is entitled to an application of FSA time credits to his sentence.  *See*, *e.g.*, *Whitehead v. Ricolcol*, No. 2:25-CV-02831 (WLH-MBK), 2025 WL 3482631, at *2-3 (C.D. Cal. Dec. 2, 2025) (declining to dismiss the petitioner's claims for failure to exhaust but concluding he was not entitled to relief under the FSA where petitioner was designated a "high" or "medium" risk on PATTERN assessments and the warden had not

"determined that he should be released, notwithstanding his PATTERN score.") (citation

omitted).  Accordingly, irrespective of whether Plaintiff failed to exhaust administrative

remedies and whether such failure should nevertheless be excused, the instant petition is

meritless and should be denied and dismissed.

## VI.    CONCLUSION

WHEREFORE, it is hereby

RECOMMENDED that the petition, Dkt. No. 1, be DENIED and DISMISSED in its

entirety; and it is further

RECOMMENDED that no Certificate of Appealability ("COA") shall issue because

reasonable jurists would not find it debatable that Petitioner has failed to offer a substantial

showing that he was denied a constitutional right.  See 28 U.S.C. § 2253(c); Slack v. McDaniel,

529 U.S. 473, 483-84 (2000); and it is further

ORDERED that the Clerk shall serve a copy of this Report-Recommendation and Order

on Petitioner, along with copies of unpublished decisions cited herein in accordance with Lebron

v. Sanders, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

ORDERED that the Clerk serve a copy of the Report-Recommendation on the parties.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file

written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS**

---

[4] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

**WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72.

      **IT IS SO ORDERED.**

Dated:  December 31, 2025
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

Lugo v. Hudson, Not Reported in Fed. Supp. (2014)

2014 WL 11350815

2014 WL 11350815
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Daniel LUGO, Petitioner,

v.

D. HUDSON, Respondent.

9:13-CV-0753 (GTS)

|

Signed 06/16/2014

**Attorneys and Law Firms**

DANIEL LUGO, 67190-053, FCI Ray Brook, P.O. Box 900, Ray Brook, NY 12977, Petitioner, pro se.

OFFICE OF THE UNITED STATES ATTORNEY, P.O. Box 7198, 100 S. Clinton Street, OF COUNSEL: CHARLES E. ROBERTS, AUSA, Syracuse, New York 13261-7198.

*DECISION AND ORDER*

GLENN T. SUDDABY, United States District Judge

## I. INTRODUCTION

 **\*1** Petitioner Daniel Lugo seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. No. 1, Petition ("Pet."); Dkt. No. 1–1, Memorandum of Law in Support of Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Mem."). On October 29, 2002, petitioner was sentenced in the United States District Court for the Eastern District of New York to serve an aggregate term of ten years in prison and five years supervised release following his conviction for conspiracy to commit murder in violation of 18 U.S.C. § 1959(a)(5). Pet. at 1; see *United States v. Lugo*, No. 1:01–CR–0922, Dkt. No. 218, Judgment in a Criminal Case. Petitioner does not contest his conviction. Rather, he asserts that the Federal Bureau of Prisons ("BOP") incorrectly calculated his sentence. See Pet.; Dkt. No. 7, Supplement to Petition ("Supp."). [1] Respondent opposes the petition. Dkt. No. 10, Response to Petition for Writ of Habeas Corpus ("Response"); Dkt. No. 10–1, Unpublished Cases; Dkt. No. 10–2, Declaration of Bryan Erickson ("Erickson Dec."); Dkt. No. 10–3, Exhibits to Erickson Dec. ("Exhibits"). On November 18, 2013, petitioner filed a reply. Dkt. No. 11, Reply to Response to Petition for Writ of Habeas Corpus ("Reply"). For the reasons that follow, the petition is denied and dismissed.

1       For the sake of clarity, the cited page numbers for the petition, the supplement and the records attached to each of those documents refer to the electronically generated numbers at the top right-hand corner of each page.

## II. BACKGROUND

The following factual summary is derived from the petition, respondent's answer, and the records provided by both parties. On February 4, 2000, petitioner was sentenced in New York County to serve an aggregate term of six to twelve years in a New York State correctional facility for his conviction of criminal possession of a controlled substance and conspiracy charged in two separate state indictments. Dkt. No. 10–2, Erickson Dec., ¶¶ 5–6; Dkt. No. 10–3, Exhibit B, Sentence and Commitment Orders, New York County Supreme Court. On March 8, 2000, petitioner began serving his state sentence. He received 98 days of prior custody credit toward his state sentence December 1, 1999 to March 7, 2000. Dkt. No. 10–2, Erickson Dec. at ¶ 7; Dkt. No. 10–3, Exhibit A, Sentence Monitoring, Independent Sentence Computation.

Lugo v. Hudson, Not Reported in Fed. Supp. (2014)

2014 WL 11350815

On October 18, 2001, an Assistant United States Attorney applied for a federal writ of habeas corpus ad prosequendum to secure petitioner's appearance in the Eastern District of New York for arraignment on Indictment Number 1:01–CR–0922, charging him with conspiracy to commit murder. Dkt. No. 10–2, Erickson Dec. at ¶ 8; Dkt. No. 10–3, Exhibit C, Application for Writ of Habeas Corpus, Oct. 4, 2001. The writ was issued on October 4, 2001, and it specified that petitioner was to be produced for arraignment and thereafter maintained "within the jurisdiction of" the issuing federal court "pending the satisfaction of this writ or the future orders of the Court." Dkt. No. 10–3, Exhibit C at 1.

**\*2** On October 29, 2002, petitioner was sentenced in the Eastern District of New York to serve ten years in prison and five years supervised release upon his conviction for conspiracy to commit murder. Dkt. No. 10–3, Exhibit D, Judgment in a Criminal Case. The district court ordered the federal sentence to run consecutively to petitioner's New York state sentence. *Id.* at 2. On November 14, 2002, the United States Marshals Service in the Eastern District of New York returned petitioner to the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), and lodged the federal judgment and commitment order as a detainer. Dkt. No. 10–2, Erickson Dec. at ¶ 10; Dkt. No. 10–3, Exhibit E, Individual Custody and Detention Report, USM 129, at 2, Status History.

On October 31, 2008, petitioner was released from DOCCS custody into the custody of the United States Marshals Service in this district to begin serving his federal sentence. Dkt. No. 10–3, Exhibit E, Individual Custody and Detention Report, USM 129. The BOP calculated petitioner's sentence and determined that it commenced on October 31, 2008, with a projected release date of September 3, 2017. Dkt. No. 10–2, Erickson Dec. at ¶ 4; Dkt. No. 10–3, Exhibit G, Sentencing Computation Monitoring Data.

On January 7, 2013, petitioner filed an Informal Resolution request at FCI Ray Brook in which he argued that when his federal sentence was imposed on October 29, 2002, he was ordered committed to the custody of the BOP but instead, the United States Marshals Service took him to DOCCS. Petitioner argued that, as a result, his federal sentence expired and he was entitled to release. Dkt. No. 1 at 24, Informal Resolution. On January 14, 2013, his request for relief was denied because the facility determined petitioner "cannot get credit that was credited to another sentence," and "[t]ime spent borrowed on a writ from state custody is not credit." Dkt. No. 1 at 25, Handwritten Answer.

On January 24, 2013, petitioner filed a Request for Administrative Remedy in which he raised the same arguments. Dkt. No. 1 at 22, Request for Administrative Remedy. In a response dated February 15, 2013, Warden D. Hudson denied petitioner's request. Dkt. No. 1 at 23, Part B–Response, Feb. 15, 2013. He explained that the BOP was prohibited from commencing petitioner's federal sentence on October 29, 2002, the date it was imposed, because the district court ordered the sentence to run "consecutive with the state court sentence" imposed on February 4, 2000. *Id.* Warden Hudson further explained that on October 18, 2001, petitioner was temporarily removed from state custody "on a federal writ for [his] current 10 year term of imprisonment," that on November 14, 2002, he was returned to state custody and the "federal sentence was lodged as a detainer with N.Y. state authorities," and that on October 31, 2008, petitioner was paroled on the state sentence, and his "consecutive federal sentence commenced" on that date. *Id.* Warden Hudson also explained that under BOP Program Statement 5880.28:

> time spent in custody under a writ of habeas corpus from non-federal custody will not in and of itself be considered for the purpose of crediting presentence time. The primary reason for 'writ' custody is not the federal charge. The federal court merely 'borrows' the prisoner under the provisions of the writ for secondary custody.

*Id.* (quoting Program Statement 5880.28). Warden Hudson concluded that "[s]ince the period of time [petitioner was] requesting was credited to another sentence, it cannot be applied" to petitioner's federal sentence. Id. (referencing 18 U.S.C. § 3585(b) and Program Statement 5880.28).

Lugo v. Hudson, Not Reported in Fed. Supp. (2014)

Case 9:23-cv-00295-AJB-TWD Document 16 Filed 12/31/25 Page 14 of 68

2014 WL 11350815

On February 23, 2013, petitioner filed a Regional Administrative Remedy Appeal. Dkt. No. 1 at 20, Regional Administrative Remedy Appeal. Petitioner argued that the federal district court ordered that he be committed to the custody of the BOP for ten years to run consecutive with his state sentence, and remanded him to the custody of the United States Marshals Service. *Id.* He claimed that because the Marshals Service transported him to DOCCS, they did not obey the federal court's order. *Id.* According to petitioner, after he completed his federal sentence, he was then supposed to be returned to DOCCS to continue serving his state sentence. *Id.* He argued that his federal sentence was "still running" while he was in DOCCS custody, and had expired. *Id.*

 **\*3** On March 28, 2013, petitioner's appeal was denied. Dkt. No. 1 at 21, Part B–Response. Regional Director J.L. Norwood explained that petitioner was in primary state custody when he was produced in federal court "via a federal Writ of Habeas Corpus ad Prosequendum." *Id.* Norwood explained that the federal court ordered his sentence to run consecutively to petitioner's state sentence; New York had primary custody over petitioner until he completed his state sentence on October 31, 2008; petitioner's federal sentence began upon his release from state custody; and petitioner's "production for federal prosecution via a federal writ did not shift primary jurisdiction from the state." *Id.* Finally, Norwood explained that the period of time for which petitioner sought credit against his federal sentence was credited to his state sentence, and could not be awarded twice. *Id.* (citing 18 U.S.C. § 3585(b)).

On April 12, 2013, petitioner filed a Central Office Administrative Remedy Appeal. Dkt. No. 1 at 18, Central Office Administrative. Remedy Appeal. He raised the same arguments he presented in his regional appeal, but also argued that because the district court did not stay his federal sentence, it began to run when the district court committed him to the custody of the Marshals Service and had therefore expired. *Id.* On May 22, 2013, his appeal was denied. Dkt. No. 1 at 19, Administrative Remedy No. 721266–A1, Part B–Response.

On May 8, 2013, petitioner filed another Informal Resolution request in which he asserted that there was never a writ of habeas corpus ad prosequendum issued to take him into federal custody on October 18, 2001. He argued that his federal sentence therefore began to run on October 18, 2001, and was expired. Dkt. No. 1 at 14, Informal Resolution. Petitioner did not receive a response, and on May 28, 2013, he filed a Request for Administrative Remedy repeating this argument. Dkt. No. 1 at 11, Request for Administrative Remedy; Dkt. No. 7–1 at 6, Request for Administrative Remedy. He also claimed that he was in exclusive federal custody from October 18, 2001 to October 29, 2002, and that counting forward from either date, his federal sentence was satisfied. Dkt. No. 1 at 11; Dkt. No. 7–1 at 6.

On June 18, 2013, petitioner's request for an administrative remedy was denied. Dkt. No. 7–1 at 7, Request for Administrative Remedy, Part B–Response. Warden D. Hudson explained that the issues raised in petitioner's papers were resolved in previous administrative remedy filings, and petitioner presented "no new information that would warrant further review." *Id.* On June 25, 2013, petitioner filed a Regional Administrative Remedy Appeal. Dkt. No. 7–1 at 8, Regional Administrative Remedy Appeal. On July 31, 2013, his appeal was denied because petitioner's claims were previously addressed, and his sentence was "computed correctly [.]" Dkt. No. 7–1 at 10, Part B–Response.

Petitioner filed a Central Office Administrative Remedy Appeal on August 2, 2013. Dkt. No. 7–1 at 11, Central Office Administrative Remedy Appeal. On August 21, 2013, petitioner's appeal was rejected and returned to him because he failed to provide a copy of his Regional Administrative Remedy Appeal form or a copy of the response from the Regional Director. Dkt. No. 7–1 at 16, Rejection Notice—Administrative Remedy. Petitioner was given fifteen (15) days to resubmit his appeal. *Id.* On August 20, 2013, petitioner submitted another Central Office Administrative Remedy Appeal. Dkt. No. 7–1 at 12, Central Office Administrative Remedy Appeal. The outcome of that appeal is unclear.

Respondent does not argue that petitioner's administrative remedies have not been properly exhausted, and the records show that petitioner raised his claims in several administrative appeals. The court finds that petitioner has exhausted his claims and will therefore address them on the merits.

## III. DISCUSSION

Lugo v. Hudson, Not Reported in Fed. Supp. (2014)

2014 WL 11350815

Case 9:23-cv-00295-AJB-TWD    Document 16    Filed 12/31/25    Page 15 of 68

### A. Petitioner's claims

 **\*4**  In his petition, memorandum of law, and reply, petitioner claims that: (1) because the federal district court did not stay his ten-year sentence, it commenced on the day it was imposed, and the United States Marshals Service violated the commitment order by returning him to state custody rather than committing him to the custody of the BOP; and (2) there was no valid writ of habeas corpus ad prosequendum issued, and he was therefore in exclusive federal custody beginning October 18, 2001, when he was transported to the district court. Pet.; Mem. at 2–11; Reply at 2–4. Petitioner argues that his federal sentence has therefore expired, and he is entitled to release. Pet.; Mem. at 11.

### B. Relevant Statute and Controlling Precedent

Habeas corpus relief is available if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A section 2241 petition is generally the appropriate vehicle to raise claims arising from a prison official's computation of a prisoner's sentence. *Poindexter v. Nash,* 333 F.3d 372, 377 (2d Cir.2003) (explaining that section 2241 is the proper way for a federal inmate to challenge the BOP's calculation of credit to be given for other periods of detention). Petitioner is challenging the BOP's calculation of his federal sentence, and his claims are properly brought pursuant to section 2241. Petitioner is not, however, entitled to relief.

The United States Attorney General has delegated the authority to calculate federal sentences to the Bureau of Prisons. *United States v. Wilson,* 503 U.S. 329, 331–34 (1992); *United States v. Labeille–Soto,* 163 F.3d 93, 98 (2d Cir.1998). Pursuant to 18 U.S.C. § 3585(a), a federal sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a); *Labeille–Soto,* 163 F.3d at 98. If a defendant was in primary federal custody at the time of sentencing, the federal sentence commences upon imposition. 18 U.S.C. § 3585(a); *Dutton v. U.S. Atty. Gen.*, 713 F.Supp.2d 194, 199 (W.D.N.Y.2010).

When a defendant is borrowed from the primary custody of a state by writ of habeas corpus ad prosequendum, however, the state retains primary jurisdiction over the prisoner. *See United States v. Lockenwitz,* 376 Fed.Appx. 147, 150 (2d Cir.2010) ("[A] defendant held at a federal detention facility is not 'in custody' for the purposes of § 3585(a) when he is produced through a writ of habeas corpus ad prosequendum.") (quoting *United States v. Fermin,* 252 F.3d 102, 108 n. 10 (2d Cir.2001)). The writ simply "enables a jurisdiction 'to take temporary custody of a prisoner confined within another jurisdiction, and indict, prosecute and sentence' " the prisoner. *Greenough v. Hufford,* No. 1:12–CV–8836, 2013 WL 4534997 at \*8 (S.D.N.Y. Aug. 27, 2013) (citation omitted). When the federal prosecution is complete, "principles of comity require the return of the defendant to the primary custodian." *Dutton,* 713 F.Supp.2d at 201; *see also Ortiz v. Lara,* No. 1:11–CV–2092, 2013 WL 6083409 at \*1 (S.D.N.Y. Nov. 19, 2013) ("Generally, producing a state prisoner under a writ of habeas corpus ad prosequendum to answer federal charges does not relinquish state custody."); *United States v. Wusebio,* No. 1:04–CR–0607, 2007 WL 582745 at \*2 (S.D.N.Y. Feb. 21, 2007) (same). Federal custody does not commence until "the state custodian relinquishes the prisoner upon satisfaction of the prisoner's state obligation." *Dutton,* 713 F.Supp.2d at 200–201. A prisoner is "relinquished" by the state when he or she "is released on bail, the state charges are dismissed, the prisoner is released to parole, or the state sentence expires." *Wusebio,* 2007 WL 582745 at \*2 (citations omitted).

 **\*5**  Pursuant to 18 U.S.C. § 3585(b), federal defendants may receive credit for time spent in official detention before the date the federal sentence commences if: (1) the detention was the result of the offense for which the federal sentence is ultimately imposed; or (2) the detention was the result of other charges for which the defendant was arrested after the commission of the offense for which the sentence was imposed, as long as that time has not been credited against another sentence. 18 U.S.C. § 3585(b)(1), (2). Section 3585(b) prohibits defendants from receiving "double credit for [their] detention time." *Wilson,* 503 U.S. at 337; *Lopez v. Terrell,* 654 F.3d 176, 184–85 (2d Cir.2011) (explaining that the BOP is prohibited from crediting time against a federal sentence that was already credited against a state sentence).

#### C. Application

Petitioner was in the primary custody of New York State by virtue of his arrest by New York state authorities on drug charges in 1999. New York State did not relinquish primary custody over petitioner during any time between December 1, 1999 and October 31, 2008, the date of his release to the custody of the United States Marshals Service upon completion of his state sentence. Petitioner was merely borrowed from New York State by writ of habeas corpus ad prosequendum, issued on October 4, 2001, in order to effectuate his appearance in the United States District Court in connection with his arrest and conviction for Indictment Number 1:01–CR–922. Dkt. No. 10–3, Exhibit C, Application for Writ of Habeas Corpus. Petitioner's federal prosecution did not terminate New York State's primary custody over him. *Lockenwitz,* 376 F. App'x at 150; *Dutton,* 713 F.Supp.2d at 201; *Ortiz,* 2013 WL 6083409 at *1; *Wusebio,* 2007 WL 582745 at *2.

The record contradicts petitioner's arguments that there was no writ of habeas corpus ad prosequendum issued, or that the writ was invalid. *See* Pet.; Mem. at 8–10; Reply at 2–4. The writ is captioned "Application for Writ of Habeas Corpus," but in the body of the document, the Assistant United States Attorney specified that the application was for the issuance of a writ of habeas corpus ad prosequendum. *See* Dkt. No. 10–3, Exhibit C. The writ also directed the United States Marshal to produce petitioner "on the date, at the time, and in the place recited above, and thereafter to maintain" petitioner "within the jurisdiction of this Court pending the satisfaction of this writ or the further orders of the Court." *Id.* To the extent petitioner argues that the writ is somehow invalid because it specifies that he was charged by indictment with violating only one criminal statute, 18 U.S.C. § 1959(a)(5), and not the other statutes charged in the indictment, that argument is meritless. The writ was issued in connection with Indictment Number 1:01–CR–0922, the same indictment upon which he was ultimately convicted. Dkt. No. 10–3, Exhibit C.

Moreover, the district court ordered petitioner's federal sentence to run consecutively to his New York State sentence. Dkt. No. 10–3, Exhibit D, Judgment in a Criminal Case, at 2 ("The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 10 years TO RUN CONSECUTIVE WITH THE STATE COURT SENTENCE.") (emphasis in original). Therefore, pursuant to 18 U.S.C. § 3585(a), petitioner's federal sentence could not commence until October 31, 2008, when he completed his New York sentence and was released to the United States Marshal. *Dutton,* 713 F.Supp.2d at 200–201. Petitioner was properly returned to DOCCS upon completion of his federal prosecution. *Dutton,* 713 F.Supp.2d at 201.

Finally, the 98–day period from December 1, 1999, through March 7, 2000, was credited to petitioner's New York state sentence. Dkt. No. 10–2, Erickson Dec. ¶ 7. Pursuant to 18 U.S.C. § 3585(b), petitioner cannot receive credit against his federal sentence for that 98–day period. He also cannot receive credit toward his federal sentence for the rest of the time he spent serving his state sentence. That time was credited to his state sentence and cannot be credited twice. 18 U.S.C. § 3585(b); *Wilson,* 503 U.S. at 337; Dkt. No. 10–2, Erickson Dec. at ¶ 12.

**\*6** In sum, the record shows that the BOP properly calculated petitioner's sentence, and his petition is therefore denied and dismissed.


## IV. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that the petition for a writ of habeas corpus, Dkt. No. 1, is **DENIED AND DISMISSED;** and it is further

**ORDERED** that the Clerk serve copies of this Decision and Order upon the parties in accordance with the Local Rules.


**IT IS SO ORDERED.**

2014 WL 11350815

**All Citations**

Not Reported in Fed. Supp., 2014 WL 11350815

---

          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:23-cv-00295-AJB-TWD    Document 16    Filed 12/31/25    Page 18 of 68

Holton v. Federal Bureau of Prisons, Not Reported in Fed. Supp. (2023)

2023 WL 2965145

2023 WL 2965145

Only the Westlaw citation is currently available.

United States District Court, W.D. New York.

Ruben C. HOLTON, Petitioner,

v.

FEDERAL BUREAU OF PRISONS, Respondent.

22-CV-6528 (CJS)

|

Signed April 17, 2023

**Attorneys and Law Firms**

Ruben Holton, Rochester, NY, Pro Se.

Charles E. Moynihan, U.S. Attorney's Office, Rochester, NY, for Respondent.

DECISION AND ORDER

CHARLES J. SIRAGUSA, United States District Judge

**\*1** This matter is presently before the Court on Petitioner Ruben C. Holton's *pro se* application challenging Respondent Federal Bureau of Prisons' ("BOP") execution of his sentence. Pet., Nov. 23, 2023, ECF No. 1. Specifically, Holton maintains that he has been denied the application of approximately 280 days of First Step Act Time Credits to his sentence. *Id.* Because "the pleadings of a *pro se* inmate are to be construed liberally," the Court has interpreted Holton's papers to raise the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006). Nevertheless, the Court finds that his petition [ECF No. 1] must be denied.

I. BACKGROUND

On August 11, 2016, Defendant entered into a plea agreement with the government in which he agreed to waive indictment and plead guilty to two counts: conspiracy to possess a firearm as a convicted felon in violation of 18 U.S.C. § 371, and possession of a firearm in a school zone in violation of 18 U.S.C. § 922(q)(2)(A). *United States v. Holton*, No. 14-CR-6161-CJS, Plea, ¶ 1, Aug. 11, 2016, ECF No. 63. The parties agreed pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure that the appropriate sentence in this case included a 120-month term of imprisonment. *Holton*, No. 14-CR-6161-CJS, Plea at ¶ 11.

In November 2016, the Court sentenced Defendant to be committed to the custody of the Bureau of Prisons (BOP) for a total term of 120 months' imprisonment. *United States v. Holton*, No. 14-CR-6161-CJS, J, Nov. 16, 2016, ECF No. 73. The Court also imposed a 3-year term of supervised release upon Holton's release from imprisonment. *Id.* Three years later, in November 2019, the Court denied Holton's *pro se* application to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. *United States v. Holton*, No. 14-CR-6161-CJS, Dec. and Order, Nov. 18, 2019, ECF No. 95. [1]

[1]    A motion to vacate under 28 U.S.C. § 2255 is subject to the stringent gatekeeping provisions of the Antiterrorism and Effective Death Penalty Act of 1996, including the requirement that "[b]efore a second or successive application ... is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). Nevertheless, the Court finds that Holton's present

Holton v. Federal Bureau of Prisons, Not Reported in Fed. Supp. (2023)
2023 WL 2965145
Case 9:23-cv-00295-AJB-TWD    Document 16    Filed 12/31/25    Page 19 of 68

application does not constitute a "second, successive petition" under AEDPA because it does not "represent a second attack by federal habeas petition on the same conviction." *Villanueva v. United States*, 346 F.3d 55, 60 (2d Cir. 2003) (citation omitted). Rather, it is an appropriate use of § 2241 to challenge the execution, rather than the legality, of Holton's sentence. *Villanueava*, 346 F.3d at 63 (citing *Chambers v. U.S.*, 106 F.3d 472, 474–75 (2d Cir. 1997)).

On December 21, 2018, the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("the FSA"), was signed into law. Although the most frequently cited aim of the FSA was to reduce the disparity between sentences for powder cocaine and crack cocaine offenses, another significant aim was to encourage the participation of federal inmates in evidence-based recidivism reduction programs ("EBRR") or productive activities ("PA"). *Rosenberg v. Pliler*, No. 21-CV-5321 (VEC), 2021 WL 6014938, at *1 (S.D.N.Y. Dec. 20, 2021). To that end, the FSA enables federal inmates – with certain exceptions – to earn time credits ("FSA time credits") upon successful participation in an EBRR or PA, and these credits qualify the inmates for early release from custody. 18 U.S.C. §§ 3632(d)(4)(C), 3624(g)(1)(A). Specifically, a prisoner earns ten days of FSA time credits for every 30 days of successful participation in EBRRs or PAs. § 3632(d)(4)(A). Further, if the BOP determines over two consecutive assessments that a prisoner is at a minimum or low risk of recidivism, that prisoner earns an additional five days of FSA time credits for every 30 days of successful participation. *Id.*

**\*2**  In the application presently before the Court, Holton states that the BOP has already applied 365 days of FSA time credits to his sentence, moving his projected release date from July 2024 to July 2023. Pet. at ¶ 2. He also acknowledges that he was released to a residential re-entry center in this District in September 2022. *Id.* However, he maintains that he was entitled to 645 total days of FSA time credits, leaving him with 280 days of time credits that have yet to be applied to his sentence. *Id.* Therefore, Holton asks the Court to "reach out to the BOP and grant his Petition for the remaining FSA credits owed to him towards his Home Confinement/Supervised Release." *Id.* at ¶ 3.

In opposition to Holton's application, the government cites 18 U.S.C. § 3624(g)(3), which states that inmates eligible for FSA time credits may be transferred "to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632." Resp., Feb. 16, 2023, ECF No. 6. The government argues that because the BOP has already re-calculated Holton's sentence such that his term of supervised release will begin 12 months earlier than his original release date, there is no further relief the Court is authorized to grant under the law. Resp. at 2 (referencing a copy of the BOP's "Sentence Monitoring Computation Data" for Holton, which was submitted with the government's opposition papers).

## LEGAL STANDARD

"A writ of habeas corpus under [28 U.S.C.] § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (internal citations omitted). Thus, a petition pursuant to § 2241 is the appropriate vehicle for challenging the computation of a prisoner's sentence by prison officials. *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (citations omitted).

Before an inmate can seek relief pursuant to § 2241, however, he must exhaust all relevant administrative remedies. *Carmona*, 243 F.3d at 634. "In this context, '[e]xhaustion of administrative remedies involves a multistep process under BOP regulations, ranging from requesting informal resolution of a complaint to raising that complaint to the BOP Regional Director and, ultimately, to the General Counsel of the BOP.' " *United States v. Lopez*, No. 20 CR. 230 (JFK), 2022 WL 2340430, at *2 (S.D.N.Y. June 29, 2022) (quoting *United States v. Wusebio*, No. 04 Cr. 607 (LAP), 2007 WL 582745, at *2 (S.D.N.Y. Feb. 21, 2007) (citing 28 C.F.R. §§ 542.13-542.15 (2006))). "The failure to exhaust constitutes a procedural default that bars judicial review unless the petitioner makes a showing of cause and prejudice." *United States v. Credidio*, No. 19 CR. 111 (PAE), 2020 WL 1644010, at *2 (S.D.N.Y. Apr. 2, 2020) (citing, *inter alia*, *Carmona*, 243 F.3d at 634).

## DISCUSSION

Holton v. Federal Bureau of Prisons, Not Reported in Fed. Supp. (2023)

2023 WL 2965145

After a thorough review of Holton's filing and the record in the present case, the Court finds that the application must be denied. First, Holton has not shown that he has exhausted his administrative remedies on this matter, nor demonstrated cause and prejudice for not doing so. Moreover, even if Holton had demonstrated cause for not exhausting his administrative remedies, he fails to satisfy his evidentiary burden to demonstrate by a preponderance of evidence that he is entitled to relief.

The Second Circuit has consistently held that "federal prisoners must exhaust their administrative remedies prior to filing a petition for habeas relief" under 28 U.S.C. § 2241. *Carmona*, 243 F.3d at 634. This requirement "protect[s] the authority of administrative agencies, limit[s] interference in agency affairs, develop[s] the factual record to make judicial review more efficient, and resolv[es] issues to render judicial review unnecessary." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003). Nevertheless, because the exhaustion requirement is prudential for habeas actions, it may be waived if "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry*, 329 F.3d at 62 (internal quotation marks and citation omitted).

**\*3** In the present case, Holton has failed to allege that he pursued administrative remedies, let alone exhausted them. For instance, in his reply papers, Holton suggests that the government's opposition to his application mistakenly relies upon the BOP's manual calculations of his FSA time credits reflected in his "Sentence Monitoring Computation Data" worksheet, despite the fact that the BOP now calculates FSA time credits by means of an auto-calculation application. Reply, 1, Feb. 16, 2023, ECF No. 7 (citing *Pillow v. Bureau of Prisons*, No. 4:22-CV-00713 PSH, 2022 WL 13892877, at \*1 (E.D. Ark. Oct. 21, 2022)). However, Holton fails to indicate whether he ever requested a recalculation of his time, or in any way challenged the BOP's sentence computations. Pet. at ¶ 1; Resp. at 3–4. Moreover, he offers no reasons and makes no arguments regarding why he did not or could not do so. Accordingly, Holton's petition [ECF No. 1] must be denied due to his failure to exhaust his administrative remedies or to argue cause and prejudice.

Further, even if Holton's failure to exhaust were not dispositive, the Court would still be compelled to dismiss the application based on Holton's failure to satisfy his burden of proof. A petitioner in a habeas proceeding under 28 U.S.C. § 2241 "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (internal quotation marks omitted). Although submissions by pro se plaintiffs are to be examined with special solicitude, "[a]iry generalities, conclusory assertions[,] and hearsay statements will not suffice" to meet the preponderance of the evidence standard. *United States v. Rumble*, 111 F. Supp.3d 207, 211 (N.D.N.Y. 2015) (quoting *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987)).

Here, Holton asserts that he is entitled to 645 days of FSA time credits without providing either any detail regarding the programs or activities by which such credits were earned, or any supporting documentation. Additionally, in response to the government's statement that "there is nothing else this Court could possibly grant Petitioner as relief," Holton merely asserts that "[t]his is incorrect and the correct information could have been provided, if the BOP was contacted." Reply at 1. In fact, it appears that the BOP was contacted, and the BOP's "Sentence Monitoring Computation" worksheet – which indicates that it is current as of "12-23-2022," and reflects information from a "Release Audit Completed on 08-15-2022" – indicates only that Holton was entitled to the 365 days of FSA time credit that he was awarded. Resp. at 3–4. In short, Holton fails to provide any specific information or evidentiary support for his claim.

CONCLUSION

Therefore, it is hereby ORDERED that Petitioner Ruben Holton's application challenging the Bureau of Prisons' execution of his sentence [ECF No. 1] is denied. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United*

Case 9:23-cv-00295-AJB-TWD    Document 16    Filed 12/31/25    Page 21 of 68
Holton v. Federal Bureau of Prisons, Not Reported in Fed. Supp. (2023)
2023 WL 2965145

*States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2965145

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1885207
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andre Maurice DENNIS, Petitioner,

v.

D. CHRISTENSEN, Warden, Respondent.

9:22-CV-0997 (AJB/ML)
|
Signed April 28, 2025
|
Filed April 29, 2025

**Attorneys and Law Firms**

ANDRE MAURICE DENNIS, Pro se Petitioner, Ray Brook Federal Correctional Institution, Post Office Box 900, Ray Brook, New York 12977.

HON. JOHN A. SARCONE, III, Interim United States Attorney for the Northern District of New York, RANSOM P. REYNOLDS, ESQ., Assistant United States Attorney, Counsel for Respondent, 100 South Clinton Street, Syracuse, New York 13261.

## REPORT and RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

### I. INTRODUCTION

 *1  Currently before the Court in this habeas corpus proceeding filed by the petitioner, Andre Maurice Dennis ("Petitioner"), pursuant to 28 U.S.C. § 2241, is a referral to the undersigned for a report and recommendation from United States District Judge Anthony J. Brindisi regarding the Petition. (Dkt. No. 1.) In seeking a writ of habeas corpus, Petitioner argues that (1) he was wrongfully denied credit for 1,063 days of pretrial detention in non-federal custody, and (2) his rights were violated by the failure to accurately apply his First Step Act ("FSA") credits to his sentence. (Dkt. No. 1 at 2, 6-7.)

Respondent filed a response, with exhibits, to the Petition. (Dkt. No. 21.) Respondent seeks the denial of the Petition arguing that (1) the Petition must be dismissed for failure to exhaust administrative remedies; and (2) even if Petitioner had properly exhausted his administrative remedies, he is ineligible for application of FSA time credit pursuant to 18 U.S.C. § 3632(d)(4) (D)(lxvi) because his crime involved fentanyl. (*Id.*)

Petitioner filed a traverse and argues that before commencing this action he made multiple attempts to resolve the matter and the Bureau of Prisons ("BOP") should grant him credit for his time in pretrial custody. (*See generally* Dkt. No. 24.)

### II. BACKGROUND

On November 8, 2021, Petitioner was sentenced in the United States District Court for the District of Connecticut. (Dkt. No. 1 at 1; Dkt. No. 21, Attach. 1 at ¶ 4.) Petitioner was sentenced to a 72-month term of imprisonment with a 4-year term of supervised release for possession with intent to distribute cocaine, cocaine base, heroin, and fentanyl in violation of 21 U.S.C. §§ 841(a) (1), 841(b)(1)(B)(vi), and a 10-month term of imprisonment with a 3-year term of supervised release for unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). (Dkt. No. 21, Attach. 1 at ¶ 4.)

Plaintiff has not filed a BOP Administrative Remedy submission under BOP's Administrative Remedy Program. (*Id.* at ¶ 7.)

## III. LEGAL STANDARDS

A petitioner seeking relief pursuant to 28 U.S.C. § 2241 must exhaust their administrative remedies. *See Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). "This requires compliance with the BOP's four-step Administrative Remedy Program*." Lallave v. Martinez*, 609 F. Supp. 3d 164, 179 (E.D.N.Y. 2022) (citing 28 C.F.R. § 542.10(a)).

To exhaust the BOP's four-step Administrative Remedy Program a prisoner must complete the following steps:

> The first step of the prescribed process entails making an effort to obtain an early resolution of the matter by raising the issue informally to staff. In the event this avenue does not lead to a successful resolution, the inmate next may submit a formal written [Administrative Remedy ("AR")] to the warden of the particular facility involved, utilizing a designated BP–9 form, within twenty days of the relevant event. If the AR is denied, an appeal may be taken to the appropriate BOP Regional Director within twenty calendar days of the date of denial. As a fourth and final step, an unfavorable decision from the Regional Director may be appealed to the General Counsel's office (also referred to as the "Central Office" [or "CORC"]) within thirty days of the date on which the Regional Director rejects the inmate's appeal.

**\*2** *Barber v. Perdue*, 11-CV-0127, 2012 WL 5996342, at \*4 (N.D.N.Y. Nov. 9, 2012) (Peebles, M.J.) (internal citations omitted), *report and recommendation adopted*, 2012 WL 5996866 (N.D.N.Y. Nov. 30, 2012) (Mordue, J.).[1] In sum, "[n]o administrative appeal is fully exhausted until the BOP's Central Office reviews it." *Reynolds v. Warden of FCI Ray Brook*, 16-CV-1264, 2019 WL 8064012, at \*3 (N.D.N.Y. Aug. 5, 2019) (Dancks, M.J.), *affirmed*, 850 F. App'x 132 (2d Cir. 2021). The burden of demonstrating exhaustion rests with the petitioner. *See Spring v. Schult*, 08-CV-0531, 2009 WL 3232183, at \*1 (N.D.N.Y. Oct. 1, 2009) (Kahn, J.).

[1]    The exhaustion provisions imposed by the Prisoner Litigation Reform Act ("PLRA") do not apply to habeas corpus Petitions. *See Carmona*, 243 F.3d at 634 ("[W]e note that although ... the P[LRA] ... contains a statutory administrative exhaustion requirement, ... the requirements of the [PLRA] do not apply to habeas proceedings.").

A federal inmate's failure to exhaust the administrative remedies available to him prior to commencing a Section 2241 action may "only be excused upon a showing of cause and prejudice." *Carmona*, 243 F.3d at 634. To demonstrate legal "cause," a petitioner must establish that "something external to the petitioner, something that cannot be fairly attributed to him," prevented the petitioner from fully exhausting his administrative remedies. *Tineo v. United States*, 977 F. Supp. 245, 253 (S.D.N.Y. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). Factors that constitute "cause" include "interference by officials that makes compliance with procedural rules impractical." *Hinebaugh v. Wiley*, 137 F. Supp. 2d 69, 75 (N.D.N.Y. 2001) (cleaned up) (Kahn, J.) (quoting *Tineo*, 977 F. Supp. at 253). General and conclusory allegations will not be enough to establish cause; rather, a petitioner must plead specific facts. *See Rosario v. Quay*, 15-CV-0523, 2017 WL 337977, at \*3 (D. Conn. Jan. 23, 2017). To establish prejudice, a petitioner must show "actual harm resulting from the alleged [interference]." *Hinebaugh*, 137 F. Supp. 2d at 75.

## IV. ANALYSIS

After carefully considering the matter, I recommend that the Petition be denied and dismissed for the reasons stated in Respondent's memorandum of law. (Dkt. No. 21 at 4-6.) The following is intended to supplement—not supplant—those reasons.

"A prisoner who seeks review of the Bureau of Prisons' denial of his nunc pro tunc designation request must first ... exhaust his administrative remedies." *Henriquez v. United States*, 12-CV-5590, 2012 WL 6739422, at *3 (S.D.N.Y. July 16, 2012) (citing *inter alia Setser v. United States*, 566 U.S. 231, 244 (2012) (stating that petitioner is free to challenge BOP's time credit determination first "through the Bureau's Administrative Remedy Program ... [a]nd if that does not work, [through] ... a writ of habeas corpus.")). In addition, a prisoner seeking review of BOP's failure to accurately apply his FSA credits to his sentence must first exhaust his administrative remedies. *See Mason v. Alatary*, 23-CV-0193, 2024 WL 3950643, at *13-14 (N.D.N.Y. Aug. 27, 2024) (Kahn, J.).

Petitioner and Respondent agree that Petitioner failed to fully exhaust his administrative remedies concerning his sentence computation. (Dkt. No. 21, Attach. 1 at ¶ 7; Dkt. No. 24 at 2.) Although the Petition asserts that Petitioner appealed the decision, filed a grievance, or sought an administrative remedy for his challenge (Dkt. No. 1 at ¶ 7), his Traverse acknowledges that he was unable to obtain a B-9 form to submit a formal written Administrative Remedy to the warden. (Dkt. No. 21 at ¶ 4.) Respondent states that Petitioner has never filed or attempted to file a BOP administrative remedy submission regarding sentencing computation. (Dkt. No. 21 at 4; Dkt. No. 21, Attach. 1 at ¶ 7.) [2]

[2] "The BOP maintains a database known as the SENTRY Inmate Management System ("SENTRY"). In the ordinary course of business, computerized indexes of all formal administrative remedies filed by inmates are maintained by the Institution, Regional, and Central Offices." *Navarro v. Barraza*, 23-CV-0514, 2023 WL 3483235, at *2 (M.D. Pa. May 16, 2023). Legal Assistants, like Cheryl Magnusson, have access to SENTRY and can review the database to determine compliance with the Administrative Remedy Program. (Dkt. No. 21, Attach. 1 at ¶ 2.)
"Administrative remedy submissions in SENTRY are identified first by a remedy request number that is followed by an alphabetic designation showing whether the remedy was received by the local correctional facility (denoted by a letter "F"), Regional Office (denoted by a letter "R"), or Office of General Counsel (denoted by the letter "A"); and then a number showing how many times a particular request had been received at that level." *McDonald v. Sage*, 20-CV-1737, 2022 WL 503925, at *3 n.4 (D. Conn. Feb. 18, 2022).
"SENTRY generates a report titled 'Administrative Remedy Generalized Retrieval' which allows codes to be entered to identify the reason or reasons for rejecting a request for administrative relief." *Navarro*, 2023 WL 3483235, at *2. The retrieval report was the attachment Magnusson relied upon while discussing the information in this section. (Dkt. No. 21, Attach. 1 at ¶ 7; Dkt. No. 21, Attach. 3.)

**\*3** Petitioner has not properly exhausted his administrative remedies because he has not utilized all four steps of the Administrative Review Process for his sentence computation/time credit claim. (Dkt. No. 21, Attach. 1 at ¶ 7.)

Therefore, Petitioner's claims are barred unless his failure to exhaust is excused pursuant to the "cause and prejudice" test. *Mason v. Alatary*, 23-CV-0193, 2024 WL 3950643, at *14 (N.D.N.Y. Aug. 27, 2024) (Kahn, J.); *Green v. Christensen*, 22-CV-1307, 2023 WL 4364186, at *5 (N.D.N.Y. July 6, 2023) (Sannes, C.J.) (quoting *Barber*, 2012 WL 5996342, at *5) ("The Second Circuit has held that a petitioner may pursue a request for habeas corpus relief, including pursuant to 28 U.S.C. § 2241, even where he has failed to exhaust administrative remedies prior to filing the action in district court, only upon a showing of cause and prejudice.").

Petitioner asserts that he attempted to resolve "this matter" through informal communication with staff. (Dkt. No. 24 at ¶ 3.) However, Petitioner states that he was unable to obtain a B-9 form to submit a formal written to the warden. (*Id.* at ¶ 4.) Petitioner asserts that he wrote letters to the Regional Offices and to the Central Office. (*Id.*) Liberally construing Petitioner's Traverse, he seems to argue that the exhaustion requirement should be waived given his aforementioned efforts.

However, Petitioner has failed to present circumstances supporting waiver. "First, [P]etitioner's unwavering conclusion that exhaustion was impossible because of his inability to procure BOP forms, either himself or via his family, is unpersuasive." *Green*, 2023 WL 4364186, at *5. Petitioner "fails to provide any type of evidence regarding the unsuccessful attempts he and his

family made to procure said forms." *Green*, 2023 WL 4364186, at *5 (citing *Zenquis v. Pullen*, 22-CV-1151, 2023 WL 2931585, at *4-5 (D. Conn. Apr. 13, 2023)) (emphasizing that "denial of grievance forms does not, in itself, make administrative remedies unavailable," yet finding petitioner sufficiently demonstrated, via documentation memorializing repeated requests to staff, that their actions delaying the provision of administrative grievance forms was sufficient to establish cause and prejudice to waive exhaustion). Petitioner fails to identify the time, place, and frequency with which he was unable to obtain "Administrative Remedy" forms from Mr. Dunham. (Dkt. No. 24 at 2.) Petitioner's conclusory allegations without any detail or evidence are insufficient to establish cause for his failure to exhaust administrative remedies. [3] *But see Flores v. Derr*, 23-CV-0183, 2023 WL 4236183, at *2 (D. Haw. June 28, 2023) (citing *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Miller v. Norris*, 247 F.3d 736, 738, 740 (8th Cir. 2001); *Untalan v. Derr*, 23-CV-0091, 2023 WL 2868519, at *3 (D. Haw. Apr. 10, 2023); *Sallas v. Derr*, 23-CV-0084, 2023 WL 2794793, at *3 (D. Haw. Apr. 5, 2023)) ("Courts have waived the prudential exhaustion requirement when a prison official has refused to provide an inmate with the form necessary to file an administrative grievance, determining that the administrative process was unavailable.").

[3]    Should the assigned District Judge disagree with this conclusion, the proper mechanism for resolving issues of fact regarding whether a petitioner exhausted his administrative remedies is to "obtain additional documentation and hold an evidentiary hearing." *Rosario-Santiago v. Pliler*, 21-CV-3202, 2022 WL 2991015, at *5 (S.D.N.Y. July 7, 2022).

**\*4** As a result, I recommend that the Petition be denied and dismissed for failure to exhaust his administrative remedies. [4]

[4]    In the alternative, I recommend that Petitioner's claim regarding application of FSA time credit be denied because he is ineligible for application of FSA time credit for the reasons stated in Respondent's memorandum of law. (Dkt. No. 21 at 5-6.)

## V. CERTIFICATE OF APPEALABILITY

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition. *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013). A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154. A petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; ... a court could resolve the issues in a different manner; or ... the questions are adequate to deserve encouragement to proceed further." [5] *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted).

[5]    A similar standard applies when a COA is sought to challenge the denial of a habeas petition on a procedural basis. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("[A] COA should issue ... if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

In this instance, I find that jurists of reason would not find it debatable as to whether the petition in this matter is meritorious. Accordingly, I recommend against the issuance of a COA.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Petition (Dkt. No. 1) be **DENIED and DISMISSED**, and that a certificate of appealability not be issued to Petitioner; [6] and it is further

[6]    In the alternative the undersigned recommends a hearing as set forth above in note 3.

**ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the parties, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [7] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[7]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2025 WL 1885207

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1554003
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andre' Maurice DENNIS, Petitioner,

v.

D. CHRISTENSEN, Respondent.

9:22-CV-997 (AJB/ML)
|
Signed June 2, 2025

**Attorneys and Law Firms**

ANDRE' MAURICE DENNIS, Petitioner, Pro Se, 26128-014, Ray Brook FCI, P.O. Box 900, Ray Brook, NY 12977.

HON. JOHN A. SARCONE III, RANSOM P. REYNOLDS, ESQ., Assistant United States Attorney, United States Attorney for the Northern District of New York, Attorneys for Respondent, 100 S. Clinton Street, Syracuse, NY 13261.

## ORDER ON REPORT & RECOMMENDATION

Anthony Brindisi, United States District Judge:

**\*1** On August 2, 2022, *pro se* petitioner Andre' Maurice Dennis ("petitioner"), an individual in the custody of the Bureau of Prisons ("BOP"), filed this 28 U.S.C. § 2241 petition for a writ of habeas corpus in the U.S. District Court for the District of Connecticut. Dkt. No. 1. Petitioner also moved for leave to proceed *in forma pauperis* ("IFP Application"), Dkt. Nos. 2, 3, and for the appointment of counsel, Dkt. No. 4. Thereafter, the presiding judge denied petitioner's IFP Application, Dkt. No. 7, and petitioner paid the $5.00 filing fee.

On September 6, 2022, the U.S. District Court for the District of Connecticut *sua sponte* ordered the petition transferred to this judicial district. Dkt. No. 9. As the Text Order explained, petitioner's criminal case occurred in the District of Connecticut, but he is presently incarcerated at FCI Ray Brook, a BOP facility located in the Northern District of New York. *Id.* The petition was transferred to this district and assigned to U.S. District Judge David N. Hurd. Dkt. No. 10.

On September 27, 2022, U.S. Magistrate Judge Miroslav Lovric denied without prejudice petitioner's motion for counsel and ordered respondent D. Christensen, the Warden of FCI Ray Brook ("respondent"), to respond to the § 2241 petition. Dkt. No. 11. After some extensions of time, the petition was fully briefed, Dkt. Nos. 21, 24, and reassigned to this Court, Dkt. No. 25.

On April 29, 2025, Judge Lovric advised by Report & Recommendation ("R&R") that the petition be denied and dismissed. Dkt. No. 28. As the R&R explained, the petition claimed that: (1) the BOP had wrongfully denied petitioner credit for the 1,063 days of pre-trial detention he spent in non-federal custody; and (2) petitioner's rights were violated by the BOP's failure to accurately apply First Step Act ("FSA") credits to his sentence. *Id.*

Judge Lovric concluded that he did not need to reach the merits of these claims because petitioner had failed to exhaust his administrative remedies. Dkt. No. 28 at 6. Although Judge Lovric recognized that there are exceptions to this administrative exhaustion requirement, the R&R concluded that petitioner had failed to demonstrate the kind of circumstances that might warrant the application of any of them. *Id.* at 6–7. Alternatively, Judge Lovric recommended that petitioner's FSA-credit claim be denied on the merits because the record established that he was ineligible for that form of relief. *Id.* at 7 & n.4.

Petitioner has lodged objections to Judge Lovric's R&R. Dkt. No. 29. There, petitioner contends that he started the exhaustion process, claims that the BOP knew that he was trying to seek relief, and argues that officials should have taken some further action to assist him. *See id.*

Upon *de novo* review, Judge Lovric's R&R is accepted and will be adopted. *See* 28 U.S.C. § 636(b)(1)(C). Petitioner acknowledged in his reply filing that he had failed to obtain the so-called "B-9 form" used to initiate a written appeal to the Warden and conceded that, aside from "informal" attempts to resolve his claims (which is the first step in the process), the record failed to demonstrate that he had utilized all four steps of the BOP administrative process. As relevant here, the R&R rejected petitioner's assertions that, despite these concessions, the appeal forms might have been unavailable to him (and that exhaustion should be excused) because those assertions were "conclusory allegations without any detail or evidence." Dkt. No. 28 at 7.

**\*2** The same conclusion holds true now. Petitioner claims in his objections, again in wholly conclusory terms, that he exhausted, or began to exhaust, his administrative remedies. Dkt. No. 29. And in the same paragraph of argument, petitioner appears to claim that it was not his fault that he failed to fully exhaust. *See id.* In petitioner's view, the BOP should have done more to help him navigate the process. *See id.*

Neither this argument, nor the two exhibits that petitioner has offered in support of it, are sufficient to create a fact question on the issue of exhaustion or, relatedly, waiver. [1] As before, petitioner's objections fail to identify the kind of details that might support a finding that the exhaustion requirement was fully met or should be excused—such as basic information about the time, place, or frequency with which some identifiable prison official failed to, or refused to, supply petitioner with the forms necessary to pursue his claims beyond the "informal" step.

[1]    For instance, petitioner attached a letter from the BOP dated December 19, 2024. Aside from the fact that this BOP letter post-dates his § 2241 petition, which was filed on August 8, 2022, this letter instructs plaintiff to "utilize the administrative remedy process" if he is unsatisfied with the letter's conclusion. Thus, this filing does not tend to show exhaustion or attempted exhaustion of the claims in the petition, either.

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 28) is ACCEPTED;

2. The petition (Dkt. No. 1) is DENIED and DISMISSED; and

3. No Certificate of Appealability will be issued.

**IT IS SO ORDERED.**


**All Citations**

Slip Copy, 2025 WL 1554003

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 3270524
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Jesse Aaron CHANDLER, Petitioner

v.

UNITED STATES of America, Respondent

CIVIL ACTION NO. 3:25-1248

|

Signed November 24, 2025

**Attorneys and Law Firms**

Jesse Aaron Chandler, White Deer, PA, Pro Se.

Richard D. Euliss, Kelley McGraw, DOJ-United States Attorney's Office, Harrisburg, PA, Timothy S. Judge, DOJ-United States Attorney's Office, Scranton, PA, for Respondent.

## <u>MEMORANDUM</u>

MALACHY E. MANNION, United States District Judge

**\*1** Currently before the Court is a petition for a writ of habeas corpus under 28 U.S.C. § 2241 filed by *pro se* Petitioner Jesse Aaron Chandler ("Chandler"). For the reasons set forth below, the Court will dismiss Chandler's Section 2241 petition.

## I. BACKGROUND

Chandler is currently serving a sentencing of one hundred and forty-four (144) months of federal incarceration after pleading guilty to possession of methamphetamine with intent to distribute in the United States District Court for the District of Utah. *See United States v. Chandler*, No. 16-cr-614 (D. Utah Aug. 28, 2018), ECF No. 109 at 1-2; (Doc. 1 at 1).[1] He commenced the instant action by submitting his Section 2241 petition, which the Clerk of Court docketed on July 8, 2025. (Doc. 1.) In this petition, Chandler seeks an order requiring the Federal Bureau of Prisons ("BOP") to apply First Step Act ("FSA") time credits he claims to have earned. (*Id.* at 2.)

[1]    Chandler was also sentenced to five (5) years' supervised release. *See Chandler*, ECF No. 109 at 3; (Doc. 1 at 1).

Although Chandler neither remitted the fee nor sought leave to proceed in <u>forma pauperis</u> when he filed his petition, he later paid the fee. (Doc. 4.) Soon thereafter, the Court issued an Order which, <u>inter alia</u>, directed Respondent to file a response to Chandler's Section 2241 petition. (Doc. 5.) After requesting and receiving an extension of time to file a response, Respondent timely filed a response to the petition on August 26, 2025, in which he argues that the Court should dismiss the petition because Chandler failed to exhaust his administrative remedies or, alternatively, deny the petition because it lacks merit. (Doc. 9.) Chandler then filed a reply brief, which the Clerk of Court docketed on September 15, 2025. (Doc. 10.) Chandler's Section 2241 petition is ripe for disposition.

## II. LEGAL STANDARDS

### A. Section 2241 Petitions Filed by Federal Prisoners

Section 2241 confers federal jurisdiction over a habeas petition that has been filed by a federal inmate challenging "not the validity but the execution of [their] sentence." *Cardona v. Bledsoe*, 681 F.3d 533, 535 (3d Cir. 2012) (citations and footnote omitted); *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241 (3d Cir. 2005) (stating that Section 2241 "allows a federal prisoner to challenge the 'execution' of his sentence in habeas"). While "the precise meaning of 'execution of the sentence' is hazy[,]" the phrase has been interpreted as to "put into effect" or "carry out." *Woodall*, 432 F.3d at 242, 243 (citation omitted). As a result, a federal inmate may challenge conduct undertaken by the BOP that affects the duration of the inmate's custody. *See, e.g., Barden v. Keohane*, 921 F.2d 476, 478-79 (3d Cir. 1990) (finding that a federal inmate's Section 2241 petition is actionable where the inmate attacks the term of their custody by challenging the manner in which the BOP is computing their federal sentence); *United States v. Vidal*, 647 F. App'x 59, 60 (3d Cir. 2016) (unpublished) ("Because [the federal inmate's] claim challenges the BOP's calculation of sentence credits, it is appropriately addressed in a petition for a writ of habeas corpus pursuant to [Section] 2241" (citation omitted)).

### B. Administrative Exhaustion Requirement for Section 2241 Petitions Filed by Federal Prisoners

**\*2** Unlike with Section 2254 petitions and Section 2255 motions, there is no explicit statutory exhaustion requirement for Section 2241 habeas petitions. *See Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) ("[T]here is no statutory exhaustion requirement attached to § 2241 [.]"). Nevertheless, the Third Circuit Court of Appeals has "consistently applied an exhaustion requirement to claims brought under § 2241." *Id.* (citations omitted). Exhaustion "allow[s] the appropriate agency to develop a factual record and apply its expertise[,] ... conserves judicial resources[,] and ... provide[s] agencies the opportunity to correct their own errors [which] fosters administrative autonomy." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761–62 (3d Cir. 1996) (citations omitted).

Exhaustion is the rule in most cases, and failure to exhaust will generally preclude federal habeas review. *See Eiland v. Warden Fort Dix FCI*, 634 F. App'x 87, 89 (3d Cir. 2015) (unpublished) (explaining that "exhaustion is a precondition to bringing suit" and summarily affirming district court's dismissal of Section 2241 petition due to petitioner's failure to exhaust). Only in rare circumstances is exhaustion of administrative remedies not required. For example, exhaustion is unnecessary if "the issue presented involve[s] only statutory construction." *Vasquez v. Strada*, 684 F.3d 431, 433–34 (3d Cir. 2012) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Similarly, exhaustion is not required "if an attempt to obtain relief would be futile or where the purposes of exhaustion would not be served." *Cerverizzo v. Yost*, 380 F. App'x 115, 116 (3d Cir. 2010) (unpublished); *see also Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (explaining that "[a]n exception is made [to the exhaustion requirement] only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief").

## III. DISCUSSION

### A. Exhaustion

Respondent argues that the Court should dismiss Chandler's Section 2241 petition for failure to exhaust. (Doc. 9 at 4–7.) The Court agrees.

Concerning exhaustion within the BOP, it has an Administrative Remedy Program through which federal prisoners can request review of nearly any aspect of their imprisonment. *See* 28 C.F.R. § 542.10(a) ("The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."). Specifically, the BOP has a four (4)-step administrative process through which an inmate can address issues concerning the conditions of their confinement. *See id.* § 542.13(a)–15(a). Except in circumstances inapplicable here, an inmate must first informally present the complaint to staff, who must attempt to informally resolve the matter. *See id.* § 542.13(a) ("Except as provided in § 542.13(b), an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy."). [2]

<sup>2</sup>     An attempted informal resolution is not required (1) for inmates in BOP Community Corrections Centers, (2) "prior to submission to the Regional or Central Office as provided for in § 542.14(d) of this part," and (3) when the "Warden or institution Administrative Remedy Coordinator" exercises discretion to waive it because "the inmate demonstrates an acceptable reason for bypassing informal resolution." *Id.* § 542.13(b).

If the informal resolution is unsuccessful, then the inmate must execute the appropriate form (BP-9) to bring the matter to the attention of the Warden, within twenty (20) calendar days of "the date on which the basis for the Request occurred." *See id.* § 542.14(a) ("The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred."). The only exceptions to this requirement are when the inmate: (1) raises a "sensitive" issue, "and the inmate's safety or well-being would be placed in danger if the Request became known at the institution"; (2) appeals from a Discipline Hearing Officer ("DHO") decision regarding a disciplinary infraction; (3) appeals from "Executive Panel Reviews of Control Unit placement"; (4) appeals from "the Regional Director's review of controlled housing status placement"; or (5) seeks "formal review of decisions not originating from the Warden[,] ... or his/her staff ...." § 542.14(d)(1)–(5).

 **\*3** A formal Request (or Appeal) "is considered filed on the date it is logged into the Administrative Remedy Index as received." *Id.* § 542.18. Upon the filing of the Request, the Warden has twenty (20) days to respond to the Request unless that time is extended by no more than twenty (20) days. *Id.* Importantly, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

If the inmate is dissatisfied with the Warden's response, they may appeal to the Regional Director within twenty (20) calendar days. *See id.* § 542.15(a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response."). The inmate may then, if dissatisfied with the Regional Director's response, appeal to the General Counsel at the BOP's Central Office within thirty (30) calendar days. *See id.* ("An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP–11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response."). This is the final administrative appeal level in the BOP, and no administrative appeal is considered to have been fully exhausted until considered by the BOP's General Counsel. *See id.* ("Appeal to the General Counsel is the final administrative appeal."); *see also Redmond v. Dortch*, 823 F. App'x 266, 267 (5th Cir. 2020) (unpublished) ("Redmond did not fully exhaust his remedies because he never completed the fourth and final step of appeal to the Office of General Counsel.").

Here, Chandler, who acknowledges that he has a recidivism risk assessment of "Medium Low," contends that he exhausted his administrative remedies insofar as he "filled out [a paper] cop-out" in which he requested that the Warden deem him eligible for FSA credits, placed it in an envelope addressed to the Warden, and placed it in the BOP's mail system. (Doc. 10 at 1.) He believes that if the Warden either denied his petition or failed to respond to it within thirty (30) days, he had the right to file his Section 2241 petition. (*Id.*) He is mistaken.

In 2018, Congress passed the FSA to expand federal prisoners' access to noncustodial placements. *See* Pub. L. No. 115-391, 132 Stat. 5194 (2018) (codified at 18 U.S.C. §§ 3621, 3624, 3631–35). The FSA's provisions work together to motivate inmates to participate in specific programs and activities by allowing them to receive "earned time credits" for participating in "recidivism reduction programs." 18 U.S.C. §§ 3621(h), 3624(g), 3632. It also requires the BOP to conduct initial assessments for all inmates, assign them to appropriate evidence-based recidivism reduction (EBRR) programs or productive activities (PAs), and expand the availability of such programs.

Under the FSA, the Attorney General was charged with development and release of a Risk and Needs Assessment System (the "System") within two-hundred-and-ten (210) days of December 21, 2018, the date on which the FSA was enacted. *See* 18 U.S.C. § 3632(a). The System is to be used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (5) reassigning an inmate to appropriate EBRRs and productive activities ("PAs"); (6) determining when to provide incentives and rewards for successful participation

in EBRRs and PAs; and (7) determining when the inmate is ready to transfer to pre-release custody or supervised release. *Id.* Moreover, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs." *Kurti v. White*, 19-cv-2109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020) (citing 18 U.S.C. § 3632(b)). In response to this directive, the BOP developed the "Prisoner Assessment Tool Targeting Estimated Risk and Needs" ("PATTERN") system. *Brennerman v. Warden, FCI-Allenwood Low*, No. 24-cv-2029, 2025 WL 52469, at *1 (M.D. Pa. Jan. 8, 2025) (citing *DeFoggi v. United States*, No. 20-cv-3889, 2020 WL 2899495, at *2 n.1 (D.N.J. June 3, 2020)). The PATTERN system "determines the recidivism risk of each prisoner ... and classif[ies] each prisoner as having minimum, low, medium, or high risk for recidivism." 18 U.S.C. § 3621 (a)(1).

**\*4** The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive FSA time credits to be applied toward time in pre-release custody or supervised release. *See id.* § 3632(d)(4)(A). An inmate may initially earn ten (10) days of credit for every thirty (30) days of successful participation. *See id.* Moreover, eligible inmates assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two (2) consecutive assessments may earn an additional five (5) days of credit for every thirty (30) days of successful participation. *See id.*

The BOP applies earned time credits to expedite an inmate's transfer either to prerelease custody, which includes residential reentry centers (RRCs) and home confinement, or to supervised release if such a term has been imposed as part of the inmate's sentence:

> If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.

*Id.* § 3624(g)(3)

To be eligible for early placement, the prisoner must satisfy the following eligibility criteria: First, the prisoner must have earned time credits equal to the remainder of their imposed term of imprisonment. *See id.* § 3624(g)(1)(A). Second, the prisoner must have demonstrated a reduced recidivism risk or maintained a low risk during imprisonment. *See id.* § 3624(g)(1)(B). Third, the prisoner's remaining sentence must have been computed "under applicable law." *Id.* § 3624(g)(1)(C). Fourth, for placement in prerelease custody or early placement in supervised release, the prisoner must have a minimum or low recidivism risk score in the last two (2) reassessments. *See id.* § 3624(g)(1)(D)(i)–(ii).

If an inmate cannot meet this recidivism-risk requirement, they can alternatively petition the Warden to be considered on an individualized basis for placement in prerelease custody or supervised release. *See id.* § 3624(g)(1)(D)(i)(II); *Delgado v. Barraza*, No. 23-cv-881, 2023 WL 4553380, at *1 (M.D. Pa., July 14, 2023) ("Inmates with a high or medium PATTERN score can petition the warden to be considered on an individual basis for placement in prerelease custody or supervised release." (citations omitted)). The Warden can approve that petition upon determining that the prisoner (1) "would not be a danger to society if transferred to prerelease custody or supervised release," (2) "has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities," and (3) "is unlikely to recidivate." *Id.* § 3624(g)(1)(D)(i)(II)(aa)–(cc); 28 C.F.R. § 523.44(c)(2). "This exception to the minimum-or low-recidivism-risk precondition requires an inmate to directly petition the Warden, and therefore by statute (and regulation) demands administrative exhaustion." *Fowler v. Wertzman*, No. 23-cv-290, 2023 WL 4853720, at *2 (M.D. Pa. July 28, 2023).

Although this exception requires exhaustion, the precise parameters of the actions needed to fully exhaust are unclear. The statute requires only that an otherwise ineligible prisoner petition and obtain approval from the Warden to be placed in prerelease custody or early supervised release. *See* 18 U.S.C. § 3624(g)(1)(D)(i) (allowing for placement in prerelease custody if the

prisoner "has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison ...."). It does not, inter alia, (1) establish a procedure for a prisoner to submit the petition, *i.e.* through an Inmate Request to Staff form (Form BP-S148.055 or BP-A0148), a formal Administrative Remedy (Form BP-9), or a handwritten piece of paper; (2) designate a time period within which the Warden must decide the petition; or (3) set forth any procedures for a prisoner to follow if the Warden denies the petition. *See id.*; *see also Jones v. LeMaster*, No. 23-cv-83, 2023 WL 6926201, at *2 (E.D. Ky. Oct. 19, 2023) (explaining that "§ 3624(g)(1)(D)(i)(II) grants the warden the authority to approve a prisoner's petition for an exception, and further establishes substantive criteria for evaluating it, but conspicuously does not establish any particular procedure to follow in doing so").

**\*5** Respondent indicates that BOP Program Statement 5410.01 establishes the proper procedure for a prisoner to petition the Warden for application of their FSA time credits. (Doc. 9 at 10 (citation omitted)). Under this Program Statement, the prisoner must submit an Inmate Request to Staff during their regularly scheduled Program Review. (*Id.* (citing Doc. 9-2 ¶7)). The Unit Team then forwards the prisoner's request to the Warden for decision. (*Id.* (citing Doc. 9-2 ¶7)). If this is the proper procedure, *see Waters v. Ray*, No. 23-cv-330, 2024 WL 1282416, at *3 (N.D. W. Va. Mar. 26, 2024) (discussing Program Statement 5410.01 as the applicable procedure), Chandler did not follow it because he states that he placed his Inmate Request to Staff form in the "very same mail system used to file and mail [his Section 2241 petition] to the courts," and he does not assert that he submitted it to the Unit Team during his regularly scheduled Program Review (Doc. 10 at 4).

Even if the Court determined that Chandler followed the applicable procedure by submitting his petition via an Inmate Request to Staff to the Warden, he has not exhausted this claim because he never received a decision from the Warden before filing his petition. Chandler's argument that he somehow exhausted his claim when he did not receive a response within thirty (30) days after submitting the Inmate Request to Staff form is meritless because Section 3624(g)(1)(D)(i)(II) does not require the Warden to respond within thirty (30) days or any other period. [3] As such, it appears that a federal prisoner must receive a response from the Warden to fully exhaust their claim that they qualify for the exception to the minimum-or low-recidivism-risk precondition. Therefore, Chandler failed to exhaust his administrative remedies before filing his Section 2241 petition in this case. [4]

[3]    This differentiates Section 3624(g)(1)(D)(i)(II) from a statute like 18 U.S.C. § 3582(c), which allows a federal criminal defendant to file a motion requesting that a district court modify their term of imprisonment after they have "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [their] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant, whichever is earlier ...." *Id.* § 3582(c)(1)(A). Although Chandler does not state as such, Section 3582(c) could be the foundation of his mistaken belief that he could file his Section 2241 petition if the Warden did not respond to him within thirty (30) days. *See, e.g.*, (Doc. 10 at 4 (stating that he "wait[ed] the (30) [sic] days that are required before moving onto the 2241 motion before the Courts [sic]")).

[4]    The only other option for exhaustion would involve the BOP's Administrative Remedy Program's application to petitions seeking application of the Section 3624(g)(1)(D)(ii)(II) exception. However, Chandler does not fare any better under this scenario because the Warden would have had twenty (20) calendar days to respond to his petition and, if Chandler did not receive a response within this period, he could "consider the absence of a response [by the Warden] to be a denial ...." 28 C.F.R. § 542.18. At that point, Chandler would have needed to file an appeal to the Regional Director, *see* 28 C.F.R. § 542.15(a), which he did not do, as evidenced by Chandler's lack of administrative remedies filed while incarcerated in the BOP. *See* (Docs. 9-2 ¶8; 9-5 at 2).

At this point, this Court has no BOP decision to review. Moreover, considering that the Warden has not addressed Chandler's petition, any argument that he should be excused from exhaustion because it would be futile, *see, e.g.*, (Doc. 10 at 3), is pure speculation. Accordingly, while Chandler's efforts to rehabilitate as described in his petition are surely commendable, *see* (Docs. 1 at 2; 1-2–1-4), the Court must dismiss Chandler's claim that he should have his FSA credits applied despite his "Medium Low" recidivism risk assessment based on the exception set forth in Section 3624(g)(1)(D)(i). [5]

5    Even if Chandler had filed his Section 2241 petition after the Warden denied his request, it is unclear whether the Court could consider the Warden's decision beyond determining whether the Warden abused their discretion. *See Bains v. Quay*, No. 21-cv-353, 2021 WL 5343485, at *3 n.9 (M.D. Pa. Oct. 27, 2021) (describing recidivism-risk exception in Section 3624(g)(1)(D)(i)(II) as "discretionary"), *report and recommendation adopted*, 2021 WL 5330841 (M.D. Pa. Nov. 16, 2021).

## IV. CONCLUSION

**\*6** For the above reasons, the Court will dismiss Chandler's Section 2241 petition without prejudice for his failure to exhaust administrative remedies. An appropriate Order follows.

## All Citations

Slip Copy, 2025 WL 3270524

**End of Document**          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2375271
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Archie Antwon BRIDGES, Petitioner

v.

Warden Beth RICKARD, Respondent

Civil No. 3:25-cv-1201
|
Signed August 14, 2025

**Attorneys and Law Firms**

Archie Antwon Bridges, Minersville, PA, Pro Se.

Richard D. Euliss, DOJ-United States Attorney's Office, Harrisburg, PA, Timothy S. Judge, DOJ-United States Attorney's Office, Scranton, PA, Robin Elaine Zenzinger, DOJ-United States Attorney's Office, Williamsport, PA, for Respondent.

## MEMORANDUM

Robert D. Mariani, United States District Judge

**\*1** Petitioner Archie Antwon Bridges ("Bridges") initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Bridges alleges that the Federal Bureau of Prisons ("BOP") improperly denied him earned time credits under the First Step Act ("FSA"). (*Id.*). Specifically, Bridges alleges that the BOP failed to award him 335 days of credit towards placement in a halfway house and 365 days of credit towards his FSA release date. (*Id.* at 2). For the reasons that follow, the Court will deny the habeas petition.

## I. Background

Bridges is serving a 120-month term of imprisonment imposed by the United States District Court for the Eastern District of North Carolina for his conviction of distribution and possession with intent to distribute heroin and possession of a firearm by a felon. (Doc. 6-2, Declaration of BOP Case Manager Alexander Reyes ("Reyes Decl."), at 1 ¶ 3; Doc. 6-3, Public Information Inmate Data). His current projected release date is September 25, 2026, via good conduct time. (*Id.*).

A. Administrative Remedy History

The Administrative Remedy Generalized Retrieval reveals that, while in BOP custody, Bridges filed the following administrative remedies. (Doc. 6-7, Administrative Remedy Generalized Retrieval).

On November 29, 2024, Bridges filed administrative remedy 1220697 with the institution, requesting FSA time credits. (Doc. 6-6, Declaration of BOP Warden's Secretary B. Reed ("Reed Decl."), at 2 ¶ 5; Doc. 6-7; Doc. 6-8, Administrative Remedy 1220697). The institution denied the remedy on December 9, 2024. (*Id.*). Bridges appealed to the Regional Director, and, on February 12, 2025, the Regional Director denied his appeal. (*Id.*). Bridges then appealed to the Central Office. (*Id.*). On March 25, 2025, the Central Office denied Bridges' appeal. (*Id.*).

2025 WL 2375271

On June 16, 2025, Bridges filed administrative remedy 1244066 at the institution level, wherein he requested Residential Reentry Center ("RRC") referral time. (Doc. 6-6, Reed Decl., at 2 ¶ 6; Doc. 6-7; Doc. 6-9, Administrative Remedy 1244066). On June 24, 2025, the institution denied the remedy. (*Id.*). Bridges did not appeal. (*Id.*).

### B. FSA Time Credits

The BOP conducted a First Step Act Time Credit Assessment and found that Bridges is ineligible for application of FSA time credits due to his medium PATTERN [1] score. (Doc. 6-2, Reyes Decl., at 1-2, ¶¶ 5-6; Doc. 6-4, FSA Time Credit Assessment).

[1]   The Bureau of Prison's recidivism assessment tool, Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN").

## II. Discussion

In his § 2241 petition, Bridges alleges that the BOP violated his rights by denying him earned time credits under the FSA. (Doc. 1). Respondent contends that the § 2241 petition must be denied because: (1) Bridges is not eligible for application of FSA time credits at this time; and (2) Bridges failed to exhaust his administrative remedies concerning his Second Chance Act RRC placement claims. (Doc. 6).

### A. Bridges is not Eligible for Application of FSA Time Credits

**\*2**   Under the FSA, Congress charged the Attorney General with creating a Risk and Needs Assessment System (the "System") within 210 days of December 21, 2018, the date on which the FSA was enacted. *See* 18 U.S.C. § 3632(a). The System would be used for: (1) determining an inmate's recidivism risk as part of the intake process; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically reassessing an inmate's recidivism risk; (5) reassigning an inmate to appropriate EBRRs and productive activities ("PAs"); (6) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; (7) determining when the inmate is ready to transfer to prerelease custody or supervised release; and (8) determining appropriate use of technology for those with dyslexia. *See id.* § 3632(a)(1)-(8).

The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive FSA time credits to be applied toward time in prerelease custody or supervised release. *See* 18 U.S.C. § 3632(d)(4)(A). An inmate may initially earn 10 days of credit for every thirty 30 days of successful participation. *See id.* Moreover, eligible inmates who have been assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two consecutive assessments may earn an additional five days of credit for every 30 days of successful participation. *See id.*

Inmates convicted of certain enumerated offenses, or inmates subject to a final order of removal, are ineligible to earn FSA time credits. *See id.* § 3632(d)(4)(D)-(E). In addition, an inmate cannot earn FSA time credits for EBRRs successfully completed prior to the enactment of the FSA on December 21, 2018, or "during official detention prior to the date the prisoner's sentence commences under [18 U.S.C. §] 3585(a)." *Id.* § 3632(d)(4)(B).

For application of FSA time credits to prerelease custody or supervised release, the inmate must satisfy the recidivism risk requirements set forth in 18 U.S.C. §§ 3624(g)(1)(D)(i)(1) and (ii). Those requirements are as follows.

"[I]n the case of a prisoner being placed in prerelease custody, the prisoner—[must] [have] [ ] been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner." 18 U.S.C. § 3624(g)(1)(D)(i) (I); *see also* 28 C.F.R. § 523.44(c)(1) (an eligible inmate must have "maintained a minimum or low recidivism risk through his or her last two risk and needs assessments").

"[I]n the case of a prisoner being placed in supervised release, the prisoner [must] [have] [ ] been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner." 18 U.S.C. § 3624(g)(1)(D)(ii); *see also* 28 C.F.R. § 523.44(d)(1) (an eligible inmate must have "maintained a minimum or low recidivism risk through his or her last risk and needs assessment").

Thus, inmates who are eligible for FSA time credits can accrue credits, but they cannot be applied until the inmate has earned a minimum or low recidivism risk. *See* 18 U.S.C. § 3624(g)(1)(D)(i)(I); 18 U.S.C. § 3624(g)(1)(D)(ii); 28 C.F.R. § 523.44(c)(1); 28 C.F.R. § 523.44(d)(1).

Bridges is eligible to earn FSA time credits. Although Bridges may be eligible to earn time credits, those credits cannot be applied until he has been determined to be a minimum or low risk to recidivate. *Id.* Bridges' current recidivism risk level is medium. (Doc. 6-2, Reyes Decl., at 1-2, ¶¶ 5-6; Doc. 6-4, FSA Time Credit Assessment). Bridges will not be eligible for application of FSA time credits until, among other requirements, his risk level is reduced to minimum or low.

Additionally, an inmate with a high or medium PATTERN score can petition the warden to be considered on an individualized basis for placement in prerelease custody or supervised release. *See* 18 U.S.C. § 3624(g)(1)(D)(i)(II). There is nothing in the record indicating that Bridges made such a request to the warden. Thus, the Court must deny this claim.

    B. Bridges Failed to Exhaust his Second Chance Act RRC Placement Claims

**\*3** While there is no statutory exhaustion requirement for habeas corpus petitions brought pursuant to Section 2241, the Third Circuit has recognized that "[f]ederal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to [Section] 2241." *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (citations omitted); *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). Exhaustion is required because: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citations omitted); *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981).

However, exhaustion of administrative remedies is not required where these underlying reasons for exhaustion would not be served. *See Coleman v. U.S. Parole Comm'n*, 644 F. App'x 159, 162 (3d Cir. 2016) (unpublished). "For example, exhaustion may be excused where it 'would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm.' " *Brown v. Warden Canaan USP*, 763 F. App'x 296, 297 (3d Cir. 2019) (unpublished) (quoting *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)).

In order to exhaust administrative remedies, a federal inmate must comply with the procedural requirements of the BOP's administrative remedy process, which are set forth in the Code of Federal Regulations. *See generally* 28 C.F.R. §§ 542.10-542.19. Under these regulations, an inmate shall first attempt informal resolution of his complaint with staff and, if the inmate is unable to resolve his complaint informally, he shall submit a formal, written request on the proper form to the designated staff member. *See id.* §§ 542.13-542.14. If the inmate is not satisfied with the Warden's response, the inmate shall then submit an appeal to the Regional Director, using the appropriate form. *See id.* § 542.15(a). And, finally, if the inmate is not satisfied with the Regional Director's response, then the inmate shall submit an appeal to the Office of the General Counsel, located in the BOP Central Office, using the appropriate form. *See id.* An inmate is not deemed to have exhausted his administrative remedies until his complaint has been pursued at all levels. *See id.* (explaining that an "[a]ppeal to the General Counsel is the final administrative appeal").

Here, the undisputed record reflects that, although Bridges filed an administrative remedy concerning RRC referral time— number 1244066—he undisputably failed to properly exhaust that remedy. (Docs. 6-6, 6-7, 6-9). Bridges filed administrative remedy 1244066 at the institution level, wherein he requested RRC referral time. (Doc. 6-6, Reed Decl., at 2 ¶ 6; Doc. 6-7; Doc.

6-9, Administrative Remedy 1244066). Upon review, the institution denied the remedy. (*Id.*). The record confirms that Bridges did not appeal to the Regional or Central Offices—the necessary steps to fully exhaust his administrative remedy. (*Id.*). Rather than comply with the Administrative Remedy process, Bridges bypassed the statutorily mandated procedures and, instead, filed the instant habeas petition in federal court.

Bridges concedes his failure to exhaust and argues that the exhaustion requirement should be "waive[d]." (Doc. 1, at 1). However, he fails to present any argument in support of this general assertion. (*See id.*). Bridges has not identified any BOP actions that would clearly and unambiguously violate statutory or constitutional rights, and he has not set forth any facts or advanced any argument that would permit this Court to find that exhaustion of administrative remedies would subject him to irreparable injury. His unsupported and conclusory claim that exhaustion should be waived is insufficient to circumvent the prudential exhaustion requirement for Section 2241 petitions.

 **\*4**  The Court finds that Bridges' claim must first be presented to BOP officials and fully exhausted. Because Bridges did not fully exhaust his administrative remedies before petitioning this Court, and because no exception to the exhaustion requirement applies here, this claim must be denied.

### III. Conclusion

Based on the foregoing, the Court will deny the petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. (Doc. 1).

A separate Order shall issue.

### All Citations

Slip Copy, 2025 WL 2375271

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:23-cv-00295-AJB-TWD    Document 16    Filed 12/31/25    Page 39 of 68
Bridges v. Warden Schuylkill FCI, Not Reported in Fed. Rptr. (2025)

2025 WL 3251774

2025 WL 3251774
Only the Westlaw citation is currently available.
United States Court of Appeals, Third Circuit.

Archie Antwon BRIDGES, Appellant

v.

WARDEN SCHUYLKILL FCI

No. 25-2685
|
Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or Summary
Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6 November 6, 2025
|
(Opinion filed November 21, 2025)

On Appeal from the United States District Court for the Middle District of Pennsylvania (D.C. Civil Action No. 3:25-cv-01201),
District Judge: Honorable Robert D. Mariani

**Attorneys and Law Firms**

Archie Antwon Bridges, Minersville, PA, Pro Se.

Patrick J. Bannon, Esq., Timothy S., Esq., DOJ-United States Attorney's Office, Scranton, PA, Richard Euliss, Esq., DOJ-United States Attorney's Office, Harrisburg, PA, Robin E. Zenzinger, Esq., United States District Court for the Middle District of Pennsylvania, Herman T. Schneebeli Federal Building, Williamsport, PA, for Warden Schuylkill FCI.

Before: RESTREPO, PORTER, and MONTGOMERY-REEVES, Circuit Judges

OPINION[*]

[*]     This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

 **\*1** Archie Bridges appeals *pro se* and *in forma pauperis* from the District Court's order denying his habeas petition. We will affirm.

Bridges is serving a 120-month prison sentence at the Federal Correctional Institution in Schuylkill County, Pennsylvania, following his conviction on gun and drug charges in the Eastern District of North Carolina. His projected release date currently is in September 2026. This past June, he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 because he believes that the Bureau of Prisons has unlawfully denied him earned time credits under the First Step Act ("FSA") of 2018 and Residential Reentry Center ("RRC") credits for placement in a halfway house. The United States District Court for the Middle District of Pennsylvania denied his petition on the grounds that he (1) is not yet eligible to have FSA time credits applied to his release date because his recidivism risk level of medium is too high, and (2) failed to exhaust his administrative remedies with respect to RRC credits. Bridges appeals.

2025 WL 3251774

We have jurisdiction under 18 U.S.C. § 1291, and we exercise plenary review over the District Court's legal conclusions. See Reese v. Warden Phila. FDC, 904 F.3d 244, 246 (3d Cir. 2018). We may summarily affirm if an appeal does not present a substantial question. See 3d Cir. L.A.R. 27.4 and I.O.P. 10.6.

Bridges' appeal does not raise a substantial question. Although an inmate may earn FSA time credits, federal law precludes the application of those credits to an inmate's release date until certain criteria are met. For placement in prerelease custody, prison officials must determine that the inmate presents a "minimum or low risk" of recidivism "pursuant to [his] last 2 reassessments" under the Risk and Needs Assessment System, or the prison's warden must approve the inmate's transfer petition. See 18 U.S.C. § 3624(g)(1)(D)(i)(I)-(II). For placement in supervised release, the inmate need only show that his "last reassessment" demonstrated a "minimum or low risk" of recidivism. See id. § 3624(g)(1)(D)(ii).

The District Court correctly explained that Bridges was ineligible to have his earned FSA time credits applied to his release date because he had not yet been assessed a risk level below medium, nor had he petitioned the warden of FCI Schuylkill for transfer to prerelease custody or supervised release. Bridges challenges that conclusion under Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024), which overruled the deference principles established in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). See C.A. Doc. 7 at 2-5. Loper Bright is inapplicable, however, because Bridges' ineligibility for FSA time credits is a direct consequence of unambiguous statutory language, not the Bureau's regulations. [1]

[1]    Bridges belatedly asserts that the warden approved his release by granting his "halfway house 'petition.' " See ECF Doc. 9 at 3 (citing Ex. A-1). The document he cites in support of that claim appears to reflect the recommendation of the prison's program review unit that Bridges be placed in a halfway house in May 2026. Whether or not that recommendation is tantamount to approval of a "transfer petition," it is undisputed that the document was prepared after the District Court denied Bridges' habeas petition and was never presented to that court via a motion for reconsideration. In any event, Bridges does not contest the District Court's determination that he failed to exhaust his administrative remedies in pursuit of RRC credits, and our independent review of the record confirms that he did not appeal the prison's denial of his initial request. We will affirm that portion of the District Court's ruling because Bridges has not "show[n] cause for the default or prejudice attributable thereto." See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 759 (3d Cir. 1996).

 *2    Accordingly, we grant Bridges' motion for extension of time to file a brief and we will summarily affirm the District Court's judgment.

## All Citations

Not Reported in Fed. Rptr., 2025 WL 3251774

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Stepp v. Thompson, Not Reported in Fed. Supp. (2022)
Case 9:23-cv-00295-AJB-TWD    Document 16    Filed 12/31/25    Page 41 of 68

2022 WL 16748607

2022 WL 16748607
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Jonathan STEPP, Petitioner

v.

R. THOMPSON, L.S.C.I., Respondent

No. 1:22-cv-964
|
Signed November 7, 2022

**Attorneys and Law Firms**

Jonathan Stepp, White Deer, PA, Pro Se.

Joseph J. Terz, D. Brian Simpson, U.S. Attorney's Office, Harrisburg, PA, for Respondent.

## MEMORANDUM

Sylvia H. Rambo, United States District Judge

**\*1** Petitioner Jonathan Stepp, an inmate at the Low Security Correctional Institution Allenwood, in White Deer, Pennsylvania, filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He asks the Court to direct the Federal Bureau of Prisons (BOP) to apply earned time credits to his sentence pursuant to the First Step Act (FSA) even though he is not a minimum or low recidivism risk level. Because Stepp's claim contradicts the plain language of the FSA, the Court must deny his Section 2241 petition.

## I. BACKGROUND

Stepp is currently serving a 108-month sentence imposed by the United States District Court for the Northern District of Ohio for multiple narcotics offenses. *See United States v. Stepp*, No. 1:16-cr-00308-SO-17, Doc. No. 250 (N.D. Ohio June 29, 2017). His current projected release date, via good conduct time, is November 6, 2024. (Doc. No. 6-1 at 3 ¶ 3; *id.* at 6, 7.)

Stepp filed the instant Section 2241 petition in this Court in June 2022. (*See generally* Doc. No. 1.) He asks the Court to order the BOP to apply the FSA time credits he has accumulated regardless of his recidivism risk level. (*Id.* at 8.) His petition is fully briefed and ripe for disposition.

## II. DISCUSSION

Although there is no explicit statutory exhaustion requirement for Section 2241 habeas petitions, the United States Court of Appeals for the Third Circuit has consistently held that exhaustion applies to such claims. *See Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) (citing *Schandelmeier v. Cunningham*, 819 F.2d 52, 53 (3d Cir. 1986)); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion allows the relevant agency to develop a factual record and apply its expertise, conserves judicial resources, and provides agencies the opportunity to "correct their own errors" thereby fostering "administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citations omitted). The Bureau of Prisons has a specific internal system through which federal prisoners can request review of nearly any aspect of their imprisonment. *See generally* 28 C.F.R. §§ 542.10-.19. That process begins with an informal request to staff and progresses to formal review by the warden, appeal with the Regional Director, and—ultimately—final appeal to the General Counsel. *See id.* §§ 542.13-.15.

Stepp v. Thompson, Not Reported in Fed. Supp. (2022)

Case 9:23-cv-00295-AJB-TWD    Document 16    Filed 12/31/25    Page 42 of 68

2022 WL 16748607

Exhaustion is the rule in most cases, and failure to exhaust will generally preclude federal habeas review. *See Moscato*, 98 F.3d at 761. Only in rare circumstances is exhaustion of administrative remedies not required. For example, exhaustion is unnecessary if the issue presented is one that consists purely of statutory construction. *See Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Exhaustion is likewise not required when it would be futile. *Rose v. Lundy*, 455 U.S. 509, 516 n.7 (1982); *see Cottillion v. United Refining Co.*, 781 F.3d 47, 54 (3d Cir. 2015) (affirming, in ERISA context, futility exception to exhaustion requirement).

**\*2** Stepp concedes that he has not exhausted his administrative remedies. (*See* Doc. No. 1 at 2-3.) He argues, however, that because his claim deals only with statutory construction, administrative exhaustion is not required. (*See* Doc. No. 7 at 3.) Stepp contends that the FSA's mandatory language stating that time credits earned "*shall* be applied toward time in prerelease custody or supervised release," 18 U.S.C. § 3632(d)(4)(C) (emphasis added), is at odds with the BOP's regulations and how it applies FSA time credits. He posits that, even though his recidivism risk is "high," [1] Section 3632(d)(4)(C) mandates that the BOP must apply the time credits he has earned to his sentence.

[1]    (*See* Doc. No. 1-2; Doc. No. 6-1 at 13.)

Assuming Stepp's claim involves only statutory construction and therefore does not require administrative exhaustion, it is nonetheless meritless. Stepp is overlooking 18 U.S.C. § 3624(g), which is explicitly cross-referenced in Section 3632(d)(4)(C)—the statutory provision on which Stepp relies. *See* 18 U.S.C. § 3632(d)(4)(C) ("The Director of the Bureau of Prisons shall transfer *eligible* prisoners, *as determined under section 3624(g)*, into prerelease custody or supervised release." (emphasis added).) Section 3624(g) sets forth the process for when and how FSA time credits are applied to create an earlier release date for eligible prisoners. In other words, Section 3624(g) determines who is eligible for time credit application and how those eligible prisoners are placed into early prerelease custody (like home detention) or supervised release.

Section 3624(g) requires, for placement in prerelease custody, that the prisoner "has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner" or has specific approval by the warden. 18 U.S.C. § 3624(g)(1)(D)(i). For early transfer to supervised release, Section 3624(g) requires that the inmate "has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner." *Id.* § 3624(g)(1)(D)(ii). Under either scenario, application of time credits—that is, creating and implementing an earlier release date based on credits earned—cannot occur until the prisoner has been determined to be a minimum or low recidivism risk. *See Bell v. Finley*, No. 1:21-cv-925, 2022 WL 1721045, at \*4 (M.D. Pa. May 27, 2022) (citing 18 U.S.C. § 3624(g)(1)(D)(i); 28 C.F.R. § 523.42(c)(2)(i)-(ii)); *Hernandez v. Warden FPC-Lewisburg*, No. 1:21-cv-0599, 2022 WL 452408, at \*3 (M.D. Pa. Feb. 14, 2022); *Moody v. Gubbiotti*, Civ. No. 21-12004 (RMB), 2022 WL 4976308, at \*6 (D.N.J. Oct. 3, 2022) (citing 18 U.S.C. § 3624(g)). [2]

[2]    There are additional requirements in Section 3624(g) for application of FSA time credits. For example, to be eligible for application of credits, the prisoner must have "earned time credits ... in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A).

Stepp takes issue with the language in 28 C.F.R. § 523.44(c)(1), which uses the term "may" rather than "shall" with regard to application of time credits. (*See* Doc. No. 7 at 3-5.) But this argument is a red herring. The permissive regulatory language in Section 523.44(c)(1) is not the reason why Stepp is ineligible to have his FSA time credits applied to his sentence. Rather, it is the clear language of 18 U.S.C. § 3624(g) that precludes application of Stepp's time credits until he has lowered his recidivism risk level.

In sum, while Stepp may be eligible to *earn* time credits, those credits cannot be *applied* until he has "shown through the periodic risk reassessments a demonstrated recidivism risk reduction[.]" 18 U.S.C. § 3624(g)(1)(B). Stepp's current recidivism

Stepp v. Thompson, Not Reported in Fed. Supp. (2022)

Case 9:23-cv-00295-AJB-TWD    Document 16    Filed 12/31/25    Page 43 of 68

2022 WL 16748607

risk level is high. Congress has determined that he will not be eligible for application of FSA time credits until, among other requirements, that risk level is reduced to minimum or low.[3] Accordingly, the Court must deny Stepp's habeas petition.

[3]    Or the warden of Stepp's facility of incarceration has specifically approved Stepp's petition for transfer to prerelease custody or supervised release. 18 U.S.C. § 3624(g)(1)(D)(i)(II).

## III. CONCLUSION

**\*3**  Based on the foregoing, the Court will deny Stepp's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. An appropriate Order follows.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 16748607

---

**End of Document**                                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Brown v. Garrett, Not Reported in Fed. Supp. (2022)

2022 WL 18161601

2022 WL 18161601
Only the Westlaw citation is currently available.
United States District Court, N.D. Alabama, Western Division.

Shaquala BROWN, Petitioner,

v.

Warden Chad GARRETT, Respondent.

Case No. 7:22-cv-00551-AMM-JHE
|
Signed December 22, 2022

**Attorneys and Law Firms**

Shaquala Brown, Nashville, TN, Pro Se.

John D. Saxon, Jr., United States Attorneys Office, Civil Division, Birmingham, AL, Robert Cooper Pickren, DOJ-USAO, Birmingham, AL, for Respondent.

## REPORT AND RECOMMENDATION

JOHN H. ENGLAND, III, UNITED STATES MAGISTRATE JUDGE

**\*1** Petitioner Shaquala Brown filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the Bureau of Prisons' ("BOP") method of applying First Step Act ("FSA") time credits toward her sentence. (Doc. 1). The petition was referred to the undersigned pursuant to 28 U.S.C. § 636(b) for preliminary review. For the reasons explained below, the undersigned recommends the court grant the respondent's motion for summary dismissal for failure to exhaust administrative remedies or, in the alternative, deny the petition as meritless.

### I. Factual Background

On March 4, 2020, the United States District Court for the Eastern District of Tennessee sentenced Brown to 33 months imprisonment for conspiracy to distribute and possession with intent to distribute a mixture and substance containing methamphetamine. (Doc. 8-1 at 2). Brown's current projected satisfaction date is January 1, 2023, followed by three years of supervised release. (Doc. 8-1 at 2–3). When Brown filed this action, she was incarcerated at FCI-Aliceville in Aliceville, Alabama, which is within this district.[1] (Doc. 1 at 1). Since September 2022, Brown has been in the BOP's custody on home confinement. (Doc. 8-1 at 2; doc. 15 at 1; doc. 17 at 1).

1    Because Brown was incarcerated in this district when she filed this action, venue is proper. *See Fernandez v. United States*, 941 F.2d 1488, 1495 (11th Cir. 1991) (holding that, generally, a 28 U.S.C. § 2241 petition for habeas corpus relief "may be brought only in the district court ... in which the inmate is incarcerated").

Brown requests that the court order the BOP to apply over 500 hours of FSA credits to her sentence. (Doc. 1 at 2–15). She contends that application of these credits will result in her immediate release from custody and any remaining credits should be applied toward her supervised release. (Doc. 1 at 8; Doc. 9 at 8; Doc. 16 at 2, Brown Decl. ¶ 14).

Case 9:23-cv-00295-AJB-TWD    Document 16    Filed 12/31/25    Page 45 of 68

Brown v. Garrett, Not Reported in Fed. Supp. (2022)
2022 WL 18161601

## II. Procedural History

On June 22, 2022, the respondent filed a response to Brown's petition seeking to have the petition summarily dismissed without an evidentiary hearing. (Doc. 8). On June 28, 2022, Brown filed a reply. (Doc. 9). On August 26, 2022, the undersigned entered an order notifying Brown that the court deemed the case ripe for summary disposition and of her right to file affidavits or other materials in opposition to the response. (Doc. 13 at 1). The undersigned noted that although Brown had previously filed a reply, she was permitted to supplement her reply in light of the order. (Doc. 13 at 1). On September 15, 2022, Brown supplemented her reply. (Docs. 15 & 16). The petition is ripe for review.

## III. Analysis

### A. Exhaustion Requirement

"Although the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), does not apply to habeas petitions, § 2241 petitioners nevertheless are required to exhaust their administrative remedies before habeas relief can be granted." *Watkins v. Haynes*, 445 F. App'x 181, 183–84 (11th Cir. 2011); *Santiago-Lugo v. Warden*, 785 F.3d 467, 474–75 (11th Cir. 2015). However, the Eleventh Circuit Court of Appeals has held that "[i]t is no longer the law of this circuit that exhaustion of administrative remedies is a jurisdictional requirement in a § 2241 proceeding." *Santiago-Lugo*, 785 F.3d at 474–75. Because exhaustion is non-jurisdictional, "even when the defense has been preserved and asserted by the respondent throughout the proceeding, a court may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question." *Id.*; *see Granberry v. Greer*, 481 U.S. 129, 131 (1987) ("[T]here are some cases in which it is appropriate for an appellate court to address the merits of a habeas corpus petition notwithstanding the lack of complete exhaustion."). However, "[t]he exhaustion requirement is still a requirement; it's just not a jurisdictional one." *Santiago-Lugo*, 785 F.3d at 475.

**\*2** The BOP maintains an administrative remedies procedure for inmates. *See* 28 C.F.R. § 542, Subpart B. Initially, a prisoner must attempt to informally resolve the complaint with staff. *Id.* § 542.13(a). If informal attempts are unsuccessful, the prisoner must submit a Request for Administrative Remedy to the warden. *Id.* § 542.14. If the prisoner is unsatisfied with the warden's response, she may appeal to the Regional Director within 20 calendar days of the warden's response. *Id.* § 542.15. If still unsatisfied, the prisoner may appeal to the Office of General Counsel within 30 calendar days of the Regional Director's response. *Id.*

Here, Brown properly completed the administrative remedy steps at the institutional level and received a response from the warden on May 6, 2022. (Doc. 9 at 11; doc. 8-2, Garcia Decl. ¶ 12). However, Brown did not complete her appeal to the Southeast Regional Office ("SRO") before filing this action on April 26, 2022.[2] (Doc. 8-2, Garcia Decl. ¶ 12). Specifically, Brown acknowledges that the SRO's response to her appeal was due on June 16, 2022, but she argues the SRO did not respond until July 6, 2022. (Doc. 8-2, Garcia Decl. ¶ 12; doc. 8-3 at 6; doc. 16 at 1, Brown Decl. ¶ 6). However, the SRO's delay in responding to Brown's appeal is of no consequence since she filed her habeas petition on April 26, 2022—well before SRO's time to respond.[3] (Doc. 1 at 9). Consequently, she did not exhaust her administrative remedies *before* filing her petition and the petition is due to be dismissed on this ground. *See Shorter v. Warden*, 803 F. App'x 332, 336 (11th Cir. 2020) ("In general, a § 2241 petitioner must exhaust available administrative remedies before she can obtain relief in federal court.") (citing *Santiago-Lugo*, 785 F.3d at 474–75); *Krist v. Eichenlaub*, 386 F. App'x 920, 923 (11th Cir. 2010) ("To exhaust [her] administrative remedies, [the petitioner] was required to appeal that determination to the regional director, and then to the general counsel.") (citing 28 C.F.R. § 542.15(a)).

[2]    A *pro se* inmate's petition is deemed filed the date it is delivered to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 275–76 (1988); *Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999); *Garvey v. Vaughn*, 993

Brown v. Garrett, Not Reported in Fed. Supp. (2022)

2022 WL 18161601

Case 9:23-cv-00295-AJB-TWD    Document 16    Filed 12/31/25    Page 46 of 68

F.2d 776, 780–82 (11th Cir. 1993). The undersigned does not know when Brown gave her petition to prison authorities for mailing, but the petition is dated April 26, 2022. (Doc. 1 at 9). Accordingly, it is deemed filed on that date.

3    Additionally, Brown submitted an appeal to the General Counsel's Office on July 19, 2022. (Doc. 16 at 1, Brown Decl. ¶ 7; doc. 16 at 4). As of the date of her reply on September 12, 2022, Brown had not received a response from the General Counsel's Office. (Doc. 16 at 1, Brown Decl. ¶ 7).

**B. Merits of First Step Act Earned Credit Time Claim**

Notwithstanding Brown's failure to exhaust her administrative remedies, her claim that she is entitled to application of FSA credits to her sentence is due to be denied on the merits. Brown alleges that the BOP improperly calculated her sentence by not applying her FSA credits. However, the respondents contend that Brown is not eligible to have those FSA credits applied to her sentence. The undersigned agrees.

After sentencing, "the Attorney General, through the BOP, has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335 (1992). The BOP utilizes extensive policies in this administration. One such policy is the FSA, which was signed into law on December 21, 2018. *See* 18 U.S.C. § 3635. The FSA required the Attorney General to develop and publicly release a risk-and-needs-assessment system ("Assessment") within 210 days of the FSA's enactment. 18 U.S.C. § 3632. The Assessment was created to assess, among other things: an inmate's recidivism risk; the inmate's risk of violent or serious misconduct; the appropriate type and amount of evidence-based recidivism reduction ("EBRR") programming appropriate for each inmate; what EBRR programs or Productive Activities ("PA") an inmate should be assigned; when to provide incentives and rewards to an inmate for successful participation in EBRR and PAs; and when an inmate is eligible for pre-release custody or supervised custody. 18 U.S.C. § 3632(a).

**\*3** On July 19, 2019, the Attorney General published the Assessment, also known as the Prisoner Assessment Tool Targeting Estimated Risks and Needs ("PATTERN"). *See United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020) (citing U.S. Dep't of Just., *Department Of Justice Announces the Release of 3,100 Inmates Under First Step Act, Publishes Risk And Needs Assessment System* (July 19, 2019)), https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and). After PATTERN was published, the BOP had 180 days, or until January 15, 2020, to complete an initial assessment of every inmate; to start assigning inmates to appropriate EBRR programs based on an individualized assessment; to start expansion of EBRR programs and PAs offered and to add new ones; and to start implementing other risk and needs assessment tools to be used while inmates are participating in EBRR programs and PAs. *See* 18 U.S.C. § 3621(h)(1). The FSA provides for EBRR programs and PAs to be phased in within two years, or by January 15, 2022. *See* 18 U.S.C. § 3621(h)(2).

The FSA provides an incentive for inmates participating in EBRR programs or PAs to earn time credits ("ETC") to be applied toward time in pre-release custody or supervised release. *See* 18 U.S.C. § 3632(d)(4)(A). Specifically, inmates must complete 30 days of pre-approved EBRR and PAs to earn 10 days of ETC. *Id.* § 3632(d)(4)(A)(i). Furthermore, an eligible inmate who is found "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." *Id.* § 3632(d)(4)(A)(ii). The FSA precludes an inmate from earning time credits for EBRR programming the inmate successfully completed prior to the enactment of the FSA. *Id.* § 3632(d)(4)(B)(i). Moreover, the FSA expressly provides that while an inmate who has a PATTERN score of medium or high risk of recidivism is eligible to complete EBRR programs and PAs, the successfully completed programs and PAs are not applied towards the inmate's time credits until she has received a minimum or low risk PATTERN score for two consecutive assessments for prerelease custody and a minimum or low risk PATTERN score for the last reassessment for supervised released. *See* 18 U.S.C. § 3624(g)(1)(D)(i), (ii).

Brown does not dispute that on both June 1, 2022, and August 10, 2022, the BOP assessed her as having a medium risk recidivism level. (Doc. 8-4 at 2; Doc. 16 at 6). Indeed, she acknowledges that she has not met the requirement of a minimum

Brown v. Garrett, Not Reported in Fed. Supp. (2022)
2022 WL 18161601

Case 9:23-cv-00295-AJB-TWD    Document 16    Filed 12/31/25    Page 47 of 68

low risk PATTERN score for two consecutive assessments and contends she "will never be a [l]ow or [m]inimum risk due to [her] past criminal history." (Doc. 16 at 1, Brown Decl.¶ 11; doc. 9 at 4). Brown reasons, however, that she is eligible for 10 days of ETC for every 30 days of pre-approved EBRR and PAs, and that her medium risk recidivism level only prevents her from accruing an additional 5 days of time credits for every 30 days of successful EBRR programming and PAs under § 3632(d)(4)(A)(ii). (Doc. 9 at 4–5, 8). But Brown misunderstands a crucial part of the FSA concerning not just her ability to *earn* time credits, but the *application* of those credits. While Brown is free to earn time credits as an inmate with a medium risk recidivism level, under 18 U.S.C. § 3624(g)(1)(D)(i)-(ii), the BOP cannot apply those time credits to her sentence unless and until she has a minimum or low risk recidivism level for two consecutive assessments for prerelease custody or a minimum or low risk recidivism level for the last assessment for supervised release. Because Brown has not demonstrated that she is entitled to additional time credits, her claim on this ground is due to be denied.

## IV. Recommendation

**\*4** Based on the foregoing, the undersigned **RECOMMENDS** the court **GRANT** the respondent's motion for summary dismissal and **DISMISS** the petition for failure to exhaust administrative remedies or, in the alternative, **DENY** the petition as meritless.

## V. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

DONE this 22nd day of December, 2022.

## All Citations

Not Reported in Fed. Supp., 2022 WL 18161601

**Brown v. Garrett, Not Reported in Fed. Supp. (2022)**

2022 WL 18161601

---

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:23-cv-00295-AJB-TWD    Document 16    Filed 12/31/25    Page 49 of 68

Brown v. Garrett, Not Reported in Fed. Supp. (2023)

2023 WL 130519

2023 WL 130519
Only the Westlaw citation is currently available.
United States District Court, N.D. Alabama, Western Division.

Shaquala BROWN, Petitioner,

v.

Warden Chad GARRETT, Respondent.

Case No. 7:22-cv-00551-AMM-JHE
|
Signed January 9, 2023

**Attorneys and Law Firms**

Shaquala Brown, Nashville, TN, Pro Se.

John D. Saxon, Jr., United States Attorneys Office, Civil Division, Birmingham, AL, Robert Cooper Pickren, DOJ-USAO, Birmingham, AL, for Respondent.

**MEMORANDUM OPINION**

ANNA M. MANASCO, UNITED STATES DISTRICT JUDGE

 **\*1**  Petitioner Shaquala Brown filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the Federal Bureau of Prisons' method of applying First Step Act time credits toward her sentence. Doc. 1. On December 22, 2022, the magistrate judge entered a report recommending that the court grant the respondent's motion for summary dismissal for failure to exhaust administrative remedies or, in the alternative, deny the petition as meritless. Doc. 18. Although the magistrate judge advised the parties of their right to file specific written objections within fourteen days, the court has not received any objections.

After careful consideration of the record in this case and the magistrate judge's report, the court **ADOPTS** the report and **ACCEPTS** the recommendation. Consistent with that recommendation, the court finds that the respondent's motion for summary dismissal is due to be granted and the petition for a writ of habeas corpus, Doc. 1, is due to be dismissed for failure to exhaust administrative remedies or, in the alternative, denied as meritless. A final judgment will be entered.

**DONE** and **ORDERED** this 9th day of January, 2023.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 130519

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.                    1

2025 WL 3211220
Only the Westlaw citation is currently available.
United States District Court, E.D. North Carolina,
Western Division.

Terickus Jamicio ASBURY, Petitioner,

v.

Warden Lynne B. KELLY, Respondent.

No. 5:25-HC-2020-D
|
Signed November 17, 2025

**Attorneys and Law Firms**

Terickus Jamicio Asbury, Butner, NC, Pro Se.

Christina A. Kelley, DOJ-United States Attorney's Office, Raleigh, NC, for Respondent.

**ORDER**

JAMES C. DEVER III, United States District Judge

**\*1** Terickus Jamicio Asbury ("Asbury"), a federal inmate proceeding <u>pro se</u>, seeks a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. <u>See</u> [D.E. 1, 4]. On April 17, 2025, respondent moved for summary judgment [D.E. 8] and filed a memorandum in support [D.E. 9], a statement of material facts [D.E. 10], and an appendix [D.E. 11]. The court notified Asbury about the motion, the consequences of failing to respond, and the response deadline [D.E. 12]. <u>See Roseboro v. Garrison</u>, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On June 13, 2025, Asbury responded in opposition [D.E. 15] and filed a statement of material facts [D.E. 16], and an appendix [D.E. 17]. The court grants Asbury's motion to supplement his petition with an additional exhibit [D.E. 18]. As explained below, the court grants respondent's motion for summary judgment and dismisses the petition.

I.

Asbury is incarcerated at the Federal Correctional Institution II in Butner, North Carolina ("Butner"), serving a sentence of 151 months. <u>See</u> Resp't Statement of Material Facts ("RSMF") [D.E. 10] ¶ 1; Pet'r Statement of Material Facts ("PSMF") [D.E. 16] ¶ 1. Asbury's projected release date, including good conduct time, is September 4, 2031. <u>See</u> RSMF ¶ 2; PSMF ¶ 2; BOP Inmate Locator, bop.gov/inmateloc/ (search by inmate number 22685-509) (last visited Nov. 17, 2025). "As of April 1, 2025, [Asbury] has earned 365 days of First Step Act time credits toward early release, and 45 days of FSA time credits towards halfway house or home confinement placement." RSMF ¶ 3; <u>see</u> PSMF ¶ 3.

"The BOP has assessed [Asbury]'s risk level using the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) system multiple times. Each time since November 2021, [Asbury] has been assessed as a High Recidivism Risk Level." RSMF ¶ 4. On March 18, 2025, shortly after filing this petition, Asbury again received a "high" PATTERN score. <u>See</u> RSMF ¶ 5; <u>cf.</u> PSMF ¶ 4 (contending that in June 2025 Asbury was likely eligible for a "medium" PATTERN score). "As a High Risk Recidivism Level inmate, [Asbury] can accrue FSA time credits but cannot apply them to his sentence until he reaches

a Low or Minimum Recidivism Risk Level." RSMF ¶ 7. Asbury can apply for reconsideration to the warden. See PSMF ¶¶ 7–8; 18 U.S.C. § 3624(g)(1)(D)(i)(II).

## II.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. See Anderson v.Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott v. Harris, 550 U.S. 372, 378 (2007).

**\*2** Generally, the BOP will not apply Asbury's earned FSA time credits "until he has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk" Sanders v. Barraza, No. 3:23-CV-191, 2023 WL 2925176, at \*2 (M.D. Pa. Mar. 3, 2023) (unpublished) (cleaned up); see 18 U.S.C. § 3624(g)(1)(B); Gadsden v. Joseph, No. 0:23-CV-2065, 2023 WL 8006375, at \*2 (D.S.C. Oct. 27, 2023) (unpublished), report and recommendation adopted, 2023 WL 8005872 (D.S.C. Nov. 17, 2023) (unpublished); King v. Joseph, No. 2:23-CV-01847, 2023 WL 6626630, at \*4 (D.S.C. Sept. 14, 2023) (unpublished), report and recommendation adopted, 2023 WL 6626160 (D.S.C. Oct. 11, 2023) (unpublished); Compton v. Brown, No. 5:23-CV-237, 2023 WL 5767323, at \*3–4 (N.D. W. Va. Aug. 18, 2023) (unpublished), report and recommendation adopted, 2023 WL 5751435 (N.D. W. Va. Sept. 6, 2023) (unpublished); Casellas v. FCI-Mendota, No. 1:23-CV-49, 2023 WL 4535030, at \*2 (E.D. Cal. July 13, 2023) (unpublished). Assuming without deciding that Asbury's current PATTERN score is a "medium" rather than a "high" does not alter this conclusion. See Gadsden, 2023 WL 8006375, at \*3; King, 2023 WL 6626630, at \*5; Compton, 2023 WL 5767323, at \*4; Casellas, 2023 WL 4535030, at \*2; Sanders, 2023 WL 2925176, at \*2. Moreover, calculating Asbury's recidivism risk score "is solely within the discretion of the BOP." Doran v. FCI-Herlong, No. 2:22-CV-2040, 2023 WL 6314241, at \*3 (E.D. Cal. Sept. 28, 2023) (unpublished); see, e.g., Hicks v. Heckard, No. 5:23-CV-581, 2024 WL 833190, at \*6 (S.D. W. Va. Feb. 1, 2024) (unpublished), report and recommendation adopted, 2024 WL 818472 (S.D. W. Va. Feb. 27, 2024) (unpublished); Newell v. Fikes, No. 2:22-CV-53, 2023 WL 2543092, at \*2–3 (S.D. Ga. Feb. 21, 2023) (unpublished), report and recommendation adopted, 2023 WL 2541126 (S.D. Ga. Mar. 16, 2023) (unpublished). "Consequently, [Asbury]'s claim that the BOP is misapplying the First Step Act by not applying his earned time credit... is plainly without merit." Gadsden, 2023 WL 8006375, at \*3; see King, 2023 WL 6626630, at \*5; Compton, 2023 WL 5767323, at \*4. Asbury's supplemental exhibit, a June 17, 2025 BOP policy memorandum, does not alter this conclusion. Accordingly, the court grants respondent's motion for summary judgment.

## III.

In sum, the court GRANTS petitioner's motion to supplement [D.E. 18] and respondent's motion for summary judgment [D.E. 8], DISMISSES petitioner's application for a writ of habeas corpus [D.E. 1, 4], and DENIES a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001). The clerk shall close the case.

SO ORDERED. This 17 day of November, 2025.

**All Citations**

Slip Copy, 2025 WL 3211220

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 9:23-cv-00295-AJB-TWD   Document 16   Filed 12/31/25   Page 53 of 68

**Doran v. FCI-Herlong, Not Reported in Fed. Supp. (2023)**

2023 WL 6314241

2023 WL 6314241

Only the Westlaw citation is currently available.

United States District Court, E.D. California.

Jacquere J. DORAN, Petitioner,

v.

Warden, FCI-HERLONG, Respondent.

No. 2:22-cv-2040 KJN P

|

Signed September 27, 2023

|

Filed September 28, 2023

**Attorneys and Law Firms**

Jacquere James Doran, Herlong, CA, Pro Se.

Bureau of Prisons Regional Counsel, Federal Bureau of Prisons, Stockton, CA, US Attorney's Office- 2241 Unit, Eastern District of California, Michelle Rodriguez, United States Attorney's Office, Sacramento, CA, for Respondent.

ORDER

KENDALL J. NEWMAN, UNITED STATES MAGISTRATE JUDGE

**\*1** Petitioner is a federal prisoner, proceeding pro se, with an application for writ of habeas corpus pursuant to 28 U.S.C. § 2241. All parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 15.) Petitioner seeks an order directing application of earned time credits under the First Step Act ("FSA"). Respondent's motion to dismiss is before the court.

As discussed below, respondent's motion is granted.

Background

Petitioner is an inmate currently housed at the Federal Correctional Institution -- Herlong.

In April of 2019, in the Eastern District of Missouri, petitioner pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (ECF No. 18-1 at 2-29.)

Petitioner was sentenced to serve 96 months in federal custody. (ECF No. 18-1 at 14-21.)

Bureau of Prisons ("BOP") records reflect that petitioner's projected release date is May 29, 2025, assuming he receives good conduct credit. [1] (ECF No. 18-1 at 31-32.) Respondent confirms that under the FSA, petitioner has earned twelve months of earned time credits.

[1]   This date was as of March 30, 2023, the date petitioner's report was run by the BOP. (ECF No. 18-1 at 31.)

The Petition

Doran v. FCI-Herlong, Not Reported in Fed. Supp. (2023)
Case 9:23-cv-00295-AJB-TWD    Document 16    Filed 12/31/25    Page 54 of 68
2023 WL 6314241

In his first claim, petitioner alleges respondent unlawfully and secretly refuses to apply petitioner's earned time and vested diminution credits that reduce his custody where federal law established a mandatory new early release date. (ECF No. 10 at 5.) In his second claim, petitioner contends the BOP is improperly denying him FSA time credits. (ECF No. 10 at 6.) To date, petitioner has earned 407 days of FSA credits, which would reduce his prison release date by one year, and 42 days would be credited towards residential reentry center ("RRC") placement. Petitioner also claims that after filing the instant petition, he was informed that the BOP instituted a new policy which implemented factors not included in the initial BOP program statement. (ECF No. 10 at 10.) Such new policy provided for the disallowance of FSA earned time credits for a variety of reasons; for example, if a prisoner received a 100 or 200-level incident report within the prior three years, application of FSA earned time credits could be denied. Petitioner argues that the new policy and procedure violates the Due Process and Ex Post Facto Clauses. Petitioner contends that by enacting the FSA, Congress granted inmates a liberty interest in early release, and the BOP was required to provide inmates prior notice of what prohibited conduct would result in such deprivation. (ECF No. 10 at 11.) Petitioner seeks an order requiring the BOP to apply his earned FSA time credits toward his projected release date and RRC placement.

Motion to Dismiss

Under Rule 4, if a petition is not dismissed at screening, the court "must order the respondent to file an answer, motion, or other response" to the petition. R. Governing 2254 Cases 4. A motion to dismiss a petition for writ of habeas corpus is construed as a request for the court to dismiss under Rule 4 of the Rules Governing Section 2254 Cases. O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990). Under Rule 4, a district court must dismiss a habeas petition if it "plainly appears" that the petitioner is not entitled to relief. See Valdez v. Montgomery, 918 F.3d 687, 693 (9th Cir. 2019); Boyd v. Thompson, 147 F.3d 1124, 1127 (9th Cir. 1998).

Respondent's Position

**\*2** Respondent argues that this court lacks jurisdiction because petitioner lacks Article III standing, his claims are not ripe, and he fails to state a claim under law. First, petitioner is barred from demanding discretionary earned time credits application because his high risk recidivism risk score makes him ineligible. Second, because of the discretionary nature of the FSA earned time credits and the statutory discretion the BOP has to assess both credits and goal achievement, there is no "case or controversy," petitioner has no standing and there is no ripe dispute for the court to adjudicate. (ECF No. 18 at 4.) Consistent with the FSA and the requirements for use of earned time credits under the FSA, the BOP refuses to apply the discretionary earned time credits because petitioner has a recidivism risk score of high, which renders petitioner ineligible to receive such credits. (ECF No. 18-1 at 37.) Third, petitioner fails to "provide case and controversy as to what he disputes as to BOP discretionary ineligibility (high risk) assessment." (ECF No. 18 at 5.) This court may not review the BOP's discretionary high risk assessment, and the claim is not yet ripe because petitioner has over two years remaining on his sentence. (ECF No. 18 at 5.) Finally, "petitioner otherwise fails to state a claim under § 2241 for an order compelling action entrusted by law ... to BOP discretionary action." (ECF No. 18 at 6.) Respondent contends petitioner's demands are speculative and fail to demonstrate any immediate injury that would be redressed by the relief requested and would, in any event, "invade the statutory mandated discretion of the BOP." (ECF No. 18 at 6.)

In support of the motion to dismiss, respondent submitted a declaration of Christopher Liwag, the Sr. Correctional Programs Specialist with the BOP, who reviewed petitioner's prisoner records. (ECF No. 18-1 at 31.) Mr. Liwag described the three-level administrative review process available to federal inmates challenging BOP actions and confirms that petitioner filed administrative remedies regarding the application of credits toward his sentence at each level, which were denied based on petitioner's "ineligibility to apply time credits, for among other reasons, his recidivism risk score." (ECF No. 18-at 32.) Mr. Liwag described the specific provisions of the First Step Act related to earned time credits for participation in Evidence Based Recidivism Reduction Programs ("EBRRs") and Productive Activities ("PAs"). (ECF No. 18-1 at 33.) Based on his high risk recidivism score, Mr. Liwag states that petitioner is not eligible to apply any FSA credits to petitioner's sentence. (ECF No. 18-1 at 37.)

Case 9:23-cv-00295-AJB-TWD Document 16 Filed 12/31/25 Page 55 of 68
Doran v. FCI Herlong, Not Reported in Fed. Supp. (2023)
2023 WL 6314241

### Petitioner's Opposition

In opposition, petitioner first argues that "irrespective of the BOP having 'discretion whether to grant a federal prisoner applied FSA credits, petitioner should not be denied the earned time credits simply because his current recidivism risk score happens to be high." (ECF No. 21 at 2.) Petitioner contends he has done everything in his power to reduce his recidivism risk score and his efforts meet the requirements that he make a good faith effort to lower the score. (ECF No. 21 at 3) (citing 18 U.S.C. §§ 3632(d)(4)(C), 3624(g).) Petitioner states he has no control over how fast the BOP calculates his participation and recidivism score and contends the BOP should exercise its discretion in a fair and equitable manner.

Second, petitioner argues that he could be transferred to a re-entry center (halfway-house) based on his earned FSA credits and current BOP policies/procedures, yet the BOP refuses to do so. Petitioner has secured employment and could start work immediately upon his release to an RRC. (ECF No. 21 at 4.)

Respondent did not file a reply.

### Failure to State a Claim

The First Step Act ("FSA") was enacted on December 21, 2018, and implemented a number of prison and sentencing reforms, including computation of good time credits, reducing and restricting mandatory minimum sentences, safety valve eligibility, retroactive application of the Fair Sentencing Act, and the availability of early release. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

Pursuant to 18 U.S.C. § 3632, the United States Department of Justice ("DOJ") published the risk and needs assessment system on July 19, 2019. Press Release, U.S. Dep't of Just., Department of Justice Announces the Release of 3,100 Inmates Under First Step Act, Publishes Risk And Needs Assessment System (July 19, 2019), <https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and> (last visited Sept. 8, 2023). Prisoners "who successfully complete[ ] evidence-based recidivism reduction programming or productive activities" "shall earn 10 days of time credits for every 30 days of successful participation." 18 U.S.C. § 3632(d)(4)(A) (emphasis added). In addition, a prisoner assessed "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(ii) (emphasis added).

**\*3** The statute limits the application of those time credits as follows:

> Application of time credits toward prerelease custody or supervised release. --Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C) (emphasis added).

Section 3624(g) sets forth which inmates can be considered "eligible" for application of earned time credits:

(g) Prerelease custody or supervised release for risk and needs assessment system participants.--

(1) Eligible prisoners.--This subsection applies in the case of a prisoner (as such term is defined in section 3635) who--

Doran v. FCI-Herlong, Not Reported in Fed. Supp. (2023)
Case 9:23-cv-00295-AJB-TWD    Document 16    Filed 12/31/25    Page 56 of 68
2023 WL 6314241

(A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

(B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;

(C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and

(D) (i) in the case of a prisoner being placed in prerelease custody, the prisoner--

(I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

(II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that--

(aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

(bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

(cc) the prisoner is unlikely to recidivate; or

(ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

18 U.S.C. § 3624(g) (emphasis added).

Therefore, while the statute permits petitioner to earn time credits under the FSA, it does not allow for the application of those time credits in his case, because the statute limits eligibility to those inmates who pose a minimum to low risk of recidivism. As petitioner has been assessed at high risk of recidivating, he is statutorily ineligible for application of earned time credits. Respondent is also correct that this determination is solely within the discretion of the BOP. As a matter of law, 34 U.S.C. § 60541(g) grants to the Attorney General the discretion to release certain prisoners to serve the latter part of their sentence on home confinement. Petitioner has no constitutional right to relief that is purely discretionary. Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 465 (1981) ("In terms of the Due Process Clause, a ... felon's expectation that a lawfully imposed sentence will be commuted or that he will be pardoned is no more substantial than an inmate's expectation, for example, that he will not be transferred to another prison; it is simply a unilateral hope.") Petitioner's reliance on the Ex Post Facto Clause is also unavailing because the FSA did not increase the length of petitioner's sentence, and it did not remove any credits petitioner already earned.

**\*4** Petitioner fails to establish a statutory or constitutional right to application of earned time credits, and therefore fails to state a claim for relief.

Conclusion

In accordance with the above, IT IS HEREBY ORDERED that:

1. Respondent's motion to dismiss (ECF No. 18) is granted;

2. This action is dismissed; and

3. The Clerk of the Court is directed to enter judgment and close the case.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 6314241

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Newell v. Fikes, Not Reported in Fed. Supp. (2023)

2023 WL 2543092

Case 9:23-cv-00295-AJB-TWD    Document 16    Filed 12/31/25    Page 58 of 68

2023 WL 2543092
Only the Westlaw citation is currently available.
United States District Court, S.D. Georgia, Brunswick Division.

Carlos Rodriguez NEWELL, Petitioner,

v.

Warden J. FIKES, Respondent.

CIVIL ACTION NO.: 2:22-cv-53
|
Signed February 21, 2023

**Attorneys and Law Firms**

Carlos Rodriguez Newell, Jesup, GA, Pro Se.

Bradford Collins Patrick, U.S. Attorney's Office, Savannah, GA, for Respondent.

## ORDER AND REPORT AND RECOMMENDATION

BENJAMIN W. CHEESBRO, UNITED STATES MAGISTRATE JUDGE

**\*1** Petitioner Carlos Newell ("Newell"), who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. Doc. 1. Respondent filed a Motion to Dismiss, and Newell filed a Response. Docs. 6, 8. Newell also filed a Motion to Amend to Class Action, to which Respondent filed a Response. Docs. 9, 10. For the following reasons, I **RECOMMEND** the Court **GRANT** Respondent's Motion, **DENY** Newell's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Newell leave to appeal *in forma pauperis*. In addition, I **DENY** Newell's Motion to Amend.

## BACKGROUND

Newell was convicted in the District Court of the Northern District of Georgia of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and was sentenced to 180 months in prison. Doc. 6-1 at 6. Newell has a projected release date of May 14, 2029, via good conduct time release. Id. at 4.

## DISCUSSION

In his Petition, Newell makes various arguments concerning the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") system, which is utilized by the Bureau of Prisons ("BOP"). First, Newell contends PATTERN has had to be adjusted several times after misapplications of Congress' "clear intent for offenders to be able to reduce their recidivism risk level substantial[l]y by 'participating' in evidence based recidivism risk reduction programs and remaining disciplinary free." Doc. 1 at 6. Newell also contends the PATTERN system is flawed because several categories do not allow an offender's score to change enough to reduce the risk level by more than one level. Newell further contends the PATTERN system is racially biased because certain racial groups have higher criminal history scores than others. Id. Newell asserts he is unable to participate in most evidence-based reduction programs due to restrictions in place to prevent the spread of COVID-19. Id. at 7. Newell asks the Court to compel the BOP to reduce his recidivism risk level because he has maintained employment for three years, he has

Case 9:23-cv-00295-AJB-TWD   Document 16   Filed 12/31/25   Page 59 of 68

Newell v. Fikes, Not Reported in Fed. Supp. (2023)
2023 WL 2543092

been in programs continuously, and he has remained disciplinary-free. He also asks for his earned time credits to be calculated under a "low level" and to be awarded 15 days for every 30 days he has participated in evidence-based recidivism reduction ("EBRR") programs. Id.

Respondent states this Court lacks jurisdiction to review the BOP's recidivism risk level determination. Doc. 6 at 1. Alternatively, Respondent asserts Newell has no liberty interest in receiving a certain recidivism score and fails to show he is similarly situated with prisoners receiving more favorable treatment. Respondent also asserts the BOP properly determined it could not apply earned time credits to Newell's projected release date based on his recidivism level. Id. at 1–2, 3.

At base, Newell complains about the BOP's evaluation of his risk recidivism category, which, in turn, impacts the application of earned time credits under the First Step Act of 2018 ("FSA"). Newell crafts various arguments in an attempt to have the Court review and set aside the BOP's risk level determination. As explained below, Newell's arguments are unavailing. Among other things, this Court is precluded by statute from reviewing the BOP's risk level determination.

### I. The BOP Has Full Discretion to Determine Newell's Recidivism Risk Level, and the Court is Precluded From Reviewing That Determination

**\*2** Respondent argues Newell's requests to have the BOP reduce his recidivism risk level to low and award him 15 days' credit for every 30 days' participation in EBRR programs are essentially a request to have the BOP determine he is eligible for early release under 18 U.S.C. § 3624(g). Id. at 5–6. Respondent states judicial review of this determination is barred by statute and, accordingly, this Court lacks jurisdiction to review the BOP's determination on Newell's eligibility for early release based on time credits. Id. at 6.

Newell responds he is asking the Court to review the PATTERN system "for fairness, accuracy, and consistency...." Doc. 8 at 2. Newell claims he has been attempting to reduce his classification level since November 2019 but his recidivism risk level has not been reduced. Id. (citing 18 U.S.C. § 3632(a)(5)).

Under the Administrative Procedure Act ("APA"), a petitioner may use habeas corpus to challenge a BOP action. See 5 U.S.C. § 703. However, in 18 U.S.C. § 3625, Congress specified the provisions of the APA governing judicial review, §§ 701–06, were inapplicable to "the making of any determination, decision, or order under" any provision of 18 U.S.C. § 3621 to 3626. The Eleventh Circuit Court of Appeals has explained § 3625 expressly precludes judicial review of agency adjudicative decisions but not rulemaking decisions, and courts lack jurisdiction as a result of § 3625 even in a § 2241 habeas action, unless the petitioner is challenging the underlying rules and regulations that establish the criteria governing the BOP's decision-making process. Cook v. Wiley, 208 F.3d 1314, 1319 (11th Cir. 2000); see also Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011) ("To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge BOP's discretionary determinations made pursuant to [Title 18, Chapter 229, Subchapter C] would be inconsistent with the language of 18 U.S.C. § 3625."); Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998) ("[I]t is apparent that § 3625 precludes judicial review of agency adjudicative decisions but not of rulemaking decisions."). Where Congress precludes judicial review of an agency decision by statute, judicial review of that decision is limited to whether the agency acted outside its statutory limits or violated the Constitution. See Webster v. Doe, 486 U.S. 592, 597, 603 (1988); Santiago-Lebron v. Fla. Parole Comm'n, 767 F. Supp. 2d 1340, 1351 (S.D. Fla. 2011); Paradis v. Keller, 2011 WL 2790480, *4 n.3 (N.D. Ga. June 13, 2011); Klatch v. Rathman, No. 1:13-CV-01452, 2014 WL 537021, at *11 (N.D. Ala. Feb. 10, 2014); see also Rodriguez v. Johns, Civil Action No. 5:17-cv-134, 2018 WL 4102854, at *2–3 (S.D. Ga. July 26, 2018), report and recommendation adopted, 2018 WL 4100695 (S.D. Ga. Aug. 28, 2018).

The BOP's determination of whether an inmate is eligible to earn FSA time credits and eligible to apply those credits toward his sentence is made under 18 U.S.C. § 3624(g). A prisoner is eligible for prerelease custody or supervised release if he "has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the 'System') in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment[.]" 18 U.S.C. § 3624(g)(1)(A). The BOP's determination regarding Newell's requests for a reduction of his recidivism risk level and whether to award 15 days' credit for every 30 days of participation on EBRR programs falls under the purview of § 3625. The BOP's

Newell v. Fikes, Not Reported in Fed. Supp. (2023)
Case 9:23-cv-00295-AJB-TWD    Document 16    Filed 12/31/25    Page 60 of 68

2023 WL 2543092

determination on this matter is an adjudicative, discretionary determination and not a rulemaking one. "And that decision is not subject to judicial review." <u>Cook</u>, 208 F.3d at 1319. As a result, the Court should **GRANT** this portion of the Motion to Dismiss and **DISMISS** this portion of Newell's Petition.

## II. Newell Has No Protected Liberty Interest in Early Release

**\*3** Respondent notes Newell has no due process liberty interest in early release. Doc. 6 at 9 (citing cases). Specifically, Respondent states the Attorney General has discretion under the FSA to assess recidivism risk levels and to determine when a prisoner is a minimum or low recidivism risk. In addition, when the BOP calculates a prisoner's PATTERN score and recidivism risk level, no protected liberty interest is implicated. <u>Id.</u> at 10. Newell counters an eligible inmate can reduce the length of his sentence by earning and applying earned credits under the FSA and he is an eligible offender. Doc. 8 at 3.

"In order to establish a violation of the Due Process Clause, a petitioner must have been deprived of a liberty or property interest protected under the Fifth Amendment." <u>Cook</u>, 208 F.3d at 1322 (citing <u>Am. Mfrs. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 59 (1999)). "A prisoner has 'no constitutional or inherent right' in being released before the completion of a valid sentence." <u>Id.</u> (quoting <u>Greenholtz v. Inmates of Neb. Penal & Corr. Complex</u>, 442 U.S. 1, 7 (1979)). "More particularly, if the relevant statute 'places no substantive limitations on official discretion' in granting an early release from a valid sentence, no constitutionally protected liberty interest is implicated." <u>Id.</u> (quoting <u>Olim v. Wakinekona</u>, 461 U.S. 238, 249 (1983); <u>Conlogue v. Shinbaum</u>, 949 F.2d 378, 380 (11th Cir. 1991) (concluding no liberty interest arose from possibility of discretionary grant of incentive good time)); <u>see also</u> <u>Barrion v. Dugger</u>, No. 6:20-cv-41, 2022 WL 1548190 (S.D. Ga. Apr. 22, 2022) (finding prisoner "has no liberty interest in early release[ ]"), *adopted by* 2022 WL 1538753 (S.D. Ga. May 16, 2022).

The FSA gives the Attorney General the authority to develop "a risk and needs assessment system" used to, among other things, "determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism[,]" "assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner[,]" and "determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624[.]" 18 U.S.C. § 3632(a)(1)–(2), (7). To be eligible for FSA early release, a prisoner must "[have] shown through the periodic risk reassessments a demonstrated recidivism risk reduction or [have] maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment." 18 U.S.C. § 3624(g)(1)(B); <u>see</u> 28 C.F.R. § 523.44(b). The FSA gives the Attorney General discretion in assessing each prisoner's recidivism risk level and in determining when a prisoner is minimum or low recidivism risk. Thus, no constitutionally protected liberty interest is implicated when the BOP calculates a prisoner's PATTERN score and resulting recidivism risk level. <u>Prince v. Fikes</u>, No. 21-cv-643, 2021 WL 2942311, at \*3 (D. Minn. June 16, 2021) (rejecting argument petitioner entitled to time credits claim credit because federal prisoners have no right to particular security or custody classification or eligibility for rehabilitative programs), *adopted by* 2021 WL 2936656 (D. Minn. July 13, 2021).

Because the BOP has—within its discretion—scored Newell at a high recidivism risk level (which Newell recognizes, doc. 1), he is ineligible to receive time credits toward pre-release custody or supervised release. Thus, the Court should **GRANT** this portion of Respondent's Motion to Dismiss and **DISMISS** this portion of Newell's Petition.

## III. Newell's Equal Protection Claim

**\*4** Respondent states Newell provides no support for his claim African American and Hispanic inmates are scored differently in the criminal history points category in the PATTERN system than similarly situated inmates of other races and ethnicities. Doc. 6 at 11. Respondent also states a review of the PATTERN form for male inmates reveals all male inmates, regardless of race or ethnicity, are scored based on their criminal history points.

Newell asserts the PATTERN recidivism risk assessment worksheet creates a disparity based on race based on the four categories listed: (1) violent offense; (2) criminal history; (3) education score; and (4) incident reports. Doc. 8 at 4. Newell states inmates with possession of a firearm convictions are given five points, even though "courts ha[ve] decided [this] offense is not a violent

Case 9:23-cv-00295-AJB-TWD   Document 16   Filed 12/31/25   Page 61 of 68

Newell v. Fikes, Not Reported in Fed. Supp. (2023)

2023 WL 2543092

crime[,]" with 80 percent of inmates in this category being African American or Hispanic. Id. As for criminal history and education scores, Newell contends African American and Hispanic inmates are at a disadvantage against white inmates because African American and Hispanic inmates face racial disparities throughout the entire criminal justice system because these groups are arrested more than white persons and do not have the same educational opportunities as white persons. Id. Finally, Newell states African American and Hispanic inmates have a greater risk of being racially profiled by prison authorities, beginning with correctional officers who initiate incident reports. Id. at 4–5.

To state a valid equal protection claim, a prisoner must show: (1) he has been treated differently from other "similarly situated" inmates, and (2) this discriminatory treatment is based upon a constitutionally impermissible basis, such as race or religion. Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001). Additionally, a prisoner must demonstrate the respondent was motivated by a discriminatory intent or purpose. See Parks v. Warner Robins, 43 F.3d 609, 616 (11th Cir. 1995) (requiring "proof of discriminatory intent or purpose" to show an equal protection clause violation); Elston v. Talladega Cnty. Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir. 1993) (requiring a plaintiff to demonstrate the challenged action was motivated by an intent to discriminate to establish an equal protection violation).

Newell makes no compelling or reasonable argument Respondent or the BOP discriminated against him, he is similarly situated with any alleged comparator, or Respondent acted with any alleged intent or purpose. Holmes v. Watts, 2:15-cv-155, 2016 WL 205401, at *4 (S.D. Ga. Jan. 15, 2016) ("A prisoner asserting an equal protection claim must demonstrate that he is similarly situated with other prisoners who received more favorable treatment and that his discriminatory treatment was based upon some constitutionally protected interest.").[1] In fact, Newell fails to allege similarly situated white inmates in the BOP's custody have better or more advantageous PATTERN scores than their African American or Hispanic counterparts. Stated differently, Newell offers no evidence inmates of different races or ethnicities within the BOP's custody have PATTERN scores which differ based on anything other than race-neutral reasons, i.e., the use of criminal history points. Rather, Newell offers little more than generalized allegations in support of any contention race plays any role in the assignment of PATTERN scores, which is an insufficient showing for an equal protection claim. See Doc. 1. Newell makes sweeping, generalized allegations concerning the criminal justice system in this country and vague statements about racial and ethnic disparities throughout that system. Id. Again, such allegations cannot support an equal protection claim. See, e.g., Ramirez v. Johns, Civil Action No.: 5:18-cv-57, 2019 WL 2296785, at *6 (S.D. Ga. Apr. 30, 2019) (finding conclusory statements in support of alleged equal protection violations not sufficient to show prisoner similarly situated to other prisoners who were treated more favorably or the government actor intentionally discriminated against the complaining prisoner on a constitutionally impermissible basis, such as race), adopted by 2019 WL 2295939 (S.D. Ga. May 28, 2019). Thus, the Court should **GRANT** this portion of Respondent's Motion and **DENY** Newell's equal protection claim.

[1]     To the extent Newell wishes for the seven other inmates he seeks to add in a class action to be comparators, doc. 9, such a request is without merit. There is nothing before the Court—other than Newell's conclusory statements—suggesting he has been subjected to unequal treatment or is a member of a protected class.

**IV. Motion to Amend to Class Action, Doc. 9**

 **\*5**  Newell seeks to have this Court amend his cause of action as a class action. He contends several other inmates are in the same situation he is in and has included affidavits or declarations from several fellow inmates. Id.

Respondent opposes this Motion, stating Newell failed to attach a proposed amended petition or describe the substance of any proposed amendment. Doc. 10 at 1. Respondent states Newell has filed statements from other inmates without a showing of how those inmates have been injured, what their recidivism levels are, or if they exhausted their administrative remedies. Id. In addition, Respondent notes a pro se party, such as Newell, can only represent himself, not any other inmates, and the other inmates are required to file separate petitions and pay their own filing fees. Id. at 1–2.

"An individual unquestionably has the right to litigate his own claims in federal court, before both the district and appellate courts.... The right to litigate for oneself, however, does not create a coordinate right to litigate for others." Walker v. Brown,

2023 WL 2543092

No. CV 112-105, 2012 WL 4049438, at *1 (S.D. Ga. Aug. 14, 2012) (citing Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding a pro se prisoner may not litigate the interests of other prisoners in class action)), *adopted by* 2012 WL 4052038 (S.D. Ga. Sept. 13, 2012). Newell's desire to amend his cause of action as a class action fails. He cannot litigate other inmates' interests. In addition, Newell cannot add any other person as a named petitioner. The Prison Litigation Reform Act of 1996 ("PLRA") provides a prisoner bringing a civil action *in forma pauperis* must pay the full filing fee. See 28 U.S.C. § 1915(b). The Eleventh Circuit Court of Appeals has determined the language of the PLRA requires each prisoner to pay the full amount of the filing fee or face dismissal of his case. Hubbard v. Haley, 262 F.3d 1194, 1197–98 (11th Cir. 2001). None of the other seven inmates wishing to bring a habeas action have moved to proceed *in forma pauperis* or paid the applicable filing fee, and none of the other inmates filed his own petition. Thus, the Court **DENIES** Newell's Motion.

## V. Leave to Appeal *in Forma Pauperis*

The Court should also deny Newell leave to appeal *in forma pauperis*. Though Newell has not yet filed a notice of appeal, it would be appropriate to address that issue in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

 **\*6** Based on the above analysis of Newell's filings and Respondent's Motion to Dismiss, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Newell *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion and **DENY** Newell's Petition. I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Newell leave to appeal *in forma pauperis*. I **DENY** Newell's Motion to Amend.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and

recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 21st day of February, 2023.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2543092

---

**End of Document**                        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:23-cv-00295-AJB-TWD    Document 16    Filed 12/31/25    Page 64 of 68
Newell v. Fikes, Not Reported in Fed. Supp. (2023)
2023 WL 2541126

2023 WL 2541126
Only the Westlaw citation is currently available.
United States District Court, S.D. Georgia, Brunswick Division.

Carlos Rodriguez NEWELL, Petitioner,

v.

Warden J. FIKES, Respondent.

CIVIL ACTION NO.: 2:22-cv-53
|
Signed March 16, 2023

**Attorneys and Law Firms**

Carlos Rodriguez Newell, Jesup, GA, Pro Se.

Bradford Collins Patrick, U.S. Attorney's Office, Savannah, GA, for Respondent.

## ORDER

LISA GODBEY WOOD, JUDGE

**\*1**  After an independent and de novo review of the entire record, the Court concurs with the Magistrate Judge's Report and Recommendation. Dkt. No. 12. Petitioner Carlos Newell ("Newell") did not file Objections to this Report and Recommendation.

Accordingly, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation as the opinion of the Court. The Court **GRANTS** Respondent's Motion to Dismiss, **DENIES** Newell's 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus, **DIRECTS** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENIES** Newell *in forma pauperis* status on appeal.

**SO ORDERED,** this 16 day of March, 2023.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2541126

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.                    1

2025 WL 3482631
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

Demetrius WHITEHEAD, Petitioner,

v.

Warden RICOLCOL, Respondent.

2:25-cv-02831-WLH-MBK
|
Signed December 2, 2025

**Attorneys and Law Firms**

Demetrius Whitehead, Adelanto, CA, Pro Se.

Abigail W. Evans, DOJ-United States Attorney's Office, Riverside, CA, Assistant 2241-194 U.S. Attorney LA-CV, DOJ-United States Attorney's Office, Los Angeles, CA, for Respondent.

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

MICHAEL B. KAUFMAN, UNITED STATES MAGISTRATE JUDGE

**\*1**  This Report and Recommendation is submitted to the Honorable Wesley L. Hsu, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I. SUMMARY

Petitioner Demetrius Whitehead is an inmate in the custody of the Bureau of Prisons ("BOP") at the Federal Correction Institute Victorville Medium I. Dkt. 1. In this habeas action, Petitioner argues that the BOP has failed to transfer him to a residential reentry center, as required by the First Step Act and Second Chance Act. Because Petitioner fails to justify that he is entitled to habeas relief, it is recommended that the Court dismiss Petitioner's claims with prejudice.

## II. FACTS AND PROCEDURAL HISTORY

On July 21, 2015, Petitioner pled guilty to violations of 18 U.S.C. § 1951 (robbery) and 18 U.S.C. § 924(c) (use or possession of a firearm in connection with a crime of violence). *See United States v. Demetrius Whitehead*, Case No. 2:14-cr-20203-JTF (W.D. Tenn.), Dkt. 40. On November 18, 2015, Petitioner was sentenced to an aggregate term of 156 months in prison, followed by five years of supervised release. *Id.* at Dkt. 53. Petitioner was given credit for time served. Dkt. 10-1 at 10.

Petitioner is currently housed at Federal Correction Institute Victorville Medium I, in Victorville, California. BOP projects Petitioner's release date as September 16, 2026, if he earns all remaining available Good Time Credits ("GTCs"). Dkt. 10-1 at 2. BOP has determined that Petitioner has earned 162 days of GTCs under the Second Chance Act of 2007 ("SCA"). *Id.* It also determined that Petitioner is ineligible for time credits under the First Step Act of 2018 ("FSA"). *Id.*

On January 18, 2025, shortly after being transferred to FCI Victorville, Petitioner submitted an electronic message requesting that prison staff "submit [sic] placement to my SCA date." Dkt. 1 at 29. Four days later, on January 22, 2025, Petitioner submitted a written "Request for Administrative Remedy." Dkt. 1 at 28. In the request, Petitioner stated: "I haven't been put in yet for halfway house, home confinement, or my release plan I expect to get put in for all these now, because I'm SCA approved but nothing has happened." *Id.* Additionally, Petitioner stated that he had written "every department to get help with this issue and no results from doing so." *Id.* As discussed *infra*, it is unclear if or how BOP responded to Petitioner's request.

Petitioner filed the instant habeas petition, along with a supporting memorandum of authority, on March 25, 2025. Dkt. 1, 2. After two extensions of time, Respondent filed an answer on July 9, 2025. Dkt. 10. On July 14, 2025, Petitioner filed a document entitled "Motion to Supplement Opposition in Support of § 2241," (Dkt. 11), which the Court construes as a reply brief.

## III. DISCUSSION

Petitioner argues that he is entitled to an immediate transfer to a residential reentry center under the First Step Act and Second Chance Act. Respondent argues that Petitioner's claims should be dismissed for failure to exhaust or, alternatively, on the merits. While the Court concludes that dismissal on exhaustion grounds is not warranted, it recommends that Petitioner's claims be dismissed because he is not entitled to relief under the First Step Act or Second Chance Act.

### A. Respondent Fails to Justify Dismissal on Exhaustion Grounds

**\*2** Respondent argues that Petitioner's claims should be dismissed for failure to exhaust administrative remedies. Dkt. 10 at 6-8.

Administrative exhaustion is not a jurisdictional requirement for habeas petitions filed under 28 U.S.C. § 2241. However, courts may "require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241" as a "prudential matter." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citations and quotations omitted).

Because exhaustion is not jurisdictional, courts "have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). A court may waive the exhaustion requirement "when administrative remedies are inadequate or their exercise would be futile, or irreparable injury would result without immediate judicial intervention." *Ward*, 678 F.3d at 1045.

The administrative remedy program for federal inmates seeking "formal review of an issue relating to any aspect of his/her confinement" involves four steps: (1) presenting an issue of concern informally to staff, *see* 28 C.F.R. § 542.13(a); (2) submitting a formal request for administrative remedies to a facility's warden, *see* 28 C.F.R. § 542.14(a); (3) appealing to the appropriate Regional Director, *see* 28 C.F.R. § 542.15(a); and (4) appealing to the BOP's General Counsel, *see id. See generally Rodriguez-Garcia v. Warden, FCI-Herlong*, No. 2:23-CV-0849-SCR-P, 2025 WL 755698, at *2 (E.D. Cal. Mar. 10, 2025), *adopted* 2025 WL 1151006 (E.D. Cal. Apr. 18, 2025).

Here, Petitioner claims that he exhausted his claims by filing an "email cop-out" and a BP-8 form on January 18, 2025. Dkt. 2 at 3. He also attaches documents that appear to be the email and BP-8 form (although the BP-8 form indicates it was filed on January 22, 2025). Dkt. 1 at 27-28. Petitioner argues that any further exhaustion would be futile because he is entitled to immediate release and BOP officials have not responded to his email or BP-8 form. *Id.*; Dkt. 11 at 2-3. Remarkably, Respondent does not address Petitioner's exhaustion efforts, explain why BOP officials have not responded to Plaintiff's email or form, or contest Petitioner's argument that further exhaustion efforts would be futile. Under these circumstances, the Court declines to find that Petitioner's claims should be dismissed for failure to exhaust.

## B. Petitioner is Not Entitled to Relief Under the First Step Act

Petitioner alleges he is entitled to a transfer to a Residential Reentry Center ("RRC") or home confinement under the FSA. Dkt. 2 at 2.

The FSA created parameters for a "risk and needs assessment system" to classify, identify, and provide evidence-based recidivism reduction programs or productive activities for incarcerated individuals. 18 U.S.C. § 3632(a)(6). Pursuant to the FSA, the Department of Justice developed a risk tool, Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"). *See id.* § 3632(a)(1); *Gonzalez v. Herrera*, 151 F.4th 1076, 1080 n.1 (9th Cir. 2025). PATTERN is used to assess an inmate's risk profile during the intake process "as having minimum, low, medium, or high risk for recidivism," to "reassess the recidivism risk of each prisoner periodically," and to assign prisoners to appropriate recidivism-reduction programs and activities. *Id.* § 3632(a)(1)

**\*3**  The FSA allows eligible inmates to earn specified time credits per month, if they successfully participate in qualifying programs or activities. *Id.* § 3632(d)(4)(A). The FSA provides that earned time credits ("ETCs") "shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). "Prerelease custody" refers to placement in home confinement or a "community correctional facility." 18 U.S.C. § 3624(g)(2). *See also* 28 C.F.R. § 570.20(a) ("community confinement" includes "residential-reentry centers"). However, the FSA establishes that certain prisoners are ineligible to receive or apply ETCs. *See* 18 U.S.C. § 3632(d)(4)(D)-(E). Prisoners are "ineligible to receive time credits" if they have been convicted of certain specified crimes. 18 U.S.C. § 3632(d)(4)(D). Additionally, prisoners are only eligible for transfer to "prerelease custody" if they have been determined to be a "minimum or low risk" under BOP's risk assessment system or, alternatively, if their warden determines they are not "a danger to society if transferred," they have made "a good faith effort to lower their recidivism risk," and they are "unlikely to recidivate." 18 U.S.C. § 3624(g)(1)(D)(i).

Here, Respondent argues that Petitioner is ineligible for transfer to pre-release custody because he has not been determined to be "minimum or low risk." Dkt. 10 at 8. Respondent attaches records listing Petitioner's PATTERN assessments, which indicate that has been designated as a "high" or "medium" risk from 2019 to present and is currently designated a "medium" risk. Dkt. 10-1 at 16-17. Petitioner does not address Respondent's argument that he is ineligible for "prerelease custody" due to his PATTERN assessments. Nor does he assert that his warden has determined that he should be released, notwithstanding his PATTERN score. *See* 18 U.S.C. § 3624(g)(1)(D)(i). Accordingly, Petitioner has not shown he is entitled to any relief under the FSA.

## C. Petitioner is Not Entitled to Relief Under the Second Chance Act

Petitioner also alleges he is entitled to immediate transfer to an RRC or home confinement under the SCA. Dkt. 2 at 2.

The SCA altered the statutory scheme governing prisoners' place of incarceration to provide that BOP "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community," and that "[s]uch conditions may include a community correctional facility." 18 U.S.C. § 3624(c)(1). *See generally Sacora v. Thomas*, 628 F.3d 1059, 1062-63 (9th Cir. 2010) (discussing SCA amendments).

Because Petitioner's period of incarceration is scheduled to end within twelve months, (*see* Dkt. 10-1 at 2), BOP is obligated to consider whether he may spend a portion of the final months of his term in alternative housing. Respondent claims that BOP has in fact made such an assessment and determined that Plaintiff should be referred to an RRC within 181-270 days of the end of his term. Dkt. 10 at 8. Respondent attaches Plaintiff's "Individualized Needs Plan," dated February 6, 2025, which indicates that BOP made this determination in accordance with the SCA and the five-factor criteria in Section 3621(b). Dkt. 10-1 at 31-33. *See also* 18 U.S.C. § 3621(b) (providing that BOP shall determine an incarcerated individual's place of imprisonment by considering (1) "the resources of the facility contemplated"; (2) "the nature and circumstances of the offense"; (3) "the history and characteristics of the prisoner"; (4) "any statement by the court that imposed the sentence"; and (5) "any pertinent policy

statement issued by the Sentencing Commission"). The document further indicates that BOP's release plan was "discussed with" Petitioner. Dkt. 10-1 at 31-33.

Petitioner does not directly address BOP's determination that he will be referred to an RCC within 181-270 days of the end of his prison term. Instead, he appears to argue that the SCA mandates that BOP review a prisoner's case "17-19 months prior to release," (Dkt. 11), and that he is entitled to transfer to an RRC or halfway house "at least 12 months" before the end of his prison term, (Dkt. 1 at 6). However, the SCA provides that BOP "may" transfer a prisoner to an "community correctional facility" for a "*portion*" of the final twelve months of their sentence, not for a "minimum" of twelve months. 18 U.S.C. § 3624(c)(1) (emphasis added). Because Petitioner has not identified any error that BOP committed in determining that he will be referred to RRC within 181-270 days of the end of his prison term, he is not entitled to any relief under the SCA.

## IV. RECOMMENDATION

 **\*4**  For the above stated reasons, it is recommended that the District Court issue an Order: (1) approving and accepting this Report and Recommendation; (2) dismissing the Petition; and (3) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

**All Citations**

Slip Copy, 2025 WL 3482631

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.   4